**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 18, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

RAY LEE SMITH, a/k/a Lee Smith,

    Defendant - Appellant.

No. 16-2055
(D.C. No. 1:16-CR-00464-WJ-1)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **GORSUCH**, **O'BRIEN**, and **MATHESON**, Circuit Judges.
_____

Ray L. Smith was indicted on drug trafficking and money laundering charges in connection with his operation of several shops that allegedly sold a synthetic cannabinoid known as "spice."  The magistrate judge ordered Mr. Smith's release to a halfway house pending trial, subject to certain conditions.  But the government appealed and the district court stayed, then revoked, the release order.  Mr. Smith now challenges his pretrial detention.  Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3145(c), we affirm the district court's order.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.     Background

Until the government investigated and closed them, Mr. Smith and his common-law wife (and now co-defendant), Tamara Phillips, operated several "Smokin Body Jewelry" shops in Arizona and New Mexico. The government alleges that Mr. Smith manufactured spice and sold it at the shops, marketed as herbal incense, together with legal products such as adult merchandise, body jewelry, tobacco, pipes, hookahs, rolling papers, and other smoking paraphernalia.

A federal grand jury returned an indictment against Mr. Smith, charging him with conspiracy to distribute Schedule I controlled substances and controlled substance analogues in violation of 21 U.S.C. §§ 813, 841(a)(1) and (b)(1)(C), and 846; maintaining a drug-involved premise and aiding and abetting the same in violation of 21 U.S.C. § 856(a) and 18 U.S.C. § 2; and conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956(h). Each count carries a penalty of up to twenty years in prison. *See* 21 U.S.C. § 841(b)(1)(C); *id.* § 856(b); 18 U.S.C. § 1956(a)(1).

The magistrate judge conducted a detention hearing. He agreed with the government that "Mr. Smith poses a risk of non-appearance and dangerousness to the community," Aplt. App. 39, but nevertheless released him to a halfway house subject to certain conditions, including electronic monitoring and surrendering his passport. The release order was stayed pending the government's motion to revoke it.

The district court held a motions hearing, at which the government presented additional evidence—namely, testimony by Drug Enforcement Agency (DEA)

2

Special Agent Richard Stark, who supervised the investigation. In a detailed written order, the district court concluded that the government did not establish by clear and convincing evidence that Mr. Smith poses a threat to community safety, *see* Aplt. App. 155, but it did prove by a preponderance of the evidence "that Defendant is a flight risk and no condition or combination of conditions of release will ensure Defendant's appearance in court for future hearings or for jury trial," *id.* at 157. Based on the latter conclusion, it denied pretrial release.

Mr. Smith now appeals, arguing that (1) the district court erred in ordering detention because he is not a flight risk and the government did not prove by a preponderance of the evidence that no combination of conditions would ameliorate any purported flight risk and (2) the district court's findings are not sufficiently detailed to comply with 18 U.S.C. § 3142(i).

## II.    Analysis

We review the district court's ultimate pretrial detention decision de novo because it presents mixed questions of law and fact; however, we review the underlying findings of fact for clear error. *United States v. Cisneros*, 328 F.3d 610, 613 (10th Cir. 2003). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on review of the entire record, is left with the definite and firm conviction that a mistake has been committed." *United States v. Gilgert*, 314 F.3d 506, 515 (10th Cir. 2002) (brackets and internal quotation marks omitted). We review the district court's findings with significant deference,

3

cognizant that "our role is not to re-weigh the evidence." *Id.* at 515-16 (internal quotation marks omitted).

The Bail Reform Act sets out the framework for evaluating whether pretrial detention is appropriate. *See* 18 U.S.C. § 3142. The charges against Mr. Smith establish a rebuttable presumption "that no condition or combination of conditions will reasonably assure [his appearance] as required and the safety of the community." *Id.* § 3142(e)(3)(A). Mr. Smith bears the burden of producing evidence to rebut the presumption, *see United States v. Stricklin*, 932 F.2d 1353, 1354 (10th Cir. 1991), and the district court assumed he did so; still, "[e]ven if a defendant's burden of production is met, the presumption remains a factor for consideration by the district court in determining whether to release or detain," *id.* at 1355. At the same time, "the burden of persuasion regarding risk-of-flight and danger to the community always remains with the government." *Id.* at 1354-55

We cannot find fault with the district court's determination that the government met its burden or the manner in which the court reached its decision. The court considered all four relevant factors in determining whether any release conditions will reasonably assure Mr. Smith's appearance and the safety of others and the community: "(1) the nature and circumstances of the offense charged"; (2) the weight of the evidence; (3) the person's history and characteristics; and "(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." § 3142(g). Its analysis was not structured to track each factor, thus triggering Mr. Smith's § 3142(i) objection. But the

substance is there, and the court articulated its reasoning in sufficient detail to allow for meaningful appellate review.

For the first factor, the district court listed the offenses charged in the indictment and discussed the general dangers of trafficking large quantities of controlled substances.

For the second factor, the district court stated it had "no difficulty making the finding that . . . the weight of the evidence against the Defendant is very, very strong in favor of the United States and against the Defendant." Aplt. App. 154; *see also id.* at 157 ("[T]he weight of the evidence against Defendant is very strong and clearly favors the United States."). It credited Agent Stark's testimony with changing the landscape, characterizing it as "very credible" and noting that it "considerably expanded" the record that was before the magistrate judge.[1] *Id.* at 154.

For the third factor, the district court discussed Mr. Smith's past conduct and criminal history of petty and misdemeanor convictions, his family situation, failures to appear in the 1990's, prior alcohol and substance abuse problems, and his significant role in the businesses under scrutiny.

---

[1] Agent Stark testified about Mr. Smith's role as owner and operator of the shops and his involvement in their day-to-day operations and in the manufacturing of synthetic cannabinoids; undercover purchases at the smoke shops and laboratory analyses of the substances purchased; the evidence obtained through the execution of search warrants and wiretaps, including nine guns and documentation showing Mr. Smith's purchase of precursor chemicals for spice from China; a domestic violence incident involving Ms. Phillips and her statement that Mr. Smith had a drinking problem; and the cash-intensive nature of the businesses and the assets seized to date, including $60,000 in cash in a safe and $150,000 and $160,000 in separate safety deposit boxes.

For the fourth factor, the district court determined that Mr. Smith does *not* pose a threat to community safety. It reasoned that he does not have a prior criminal history involving felony crimes of violence or drug trafficking. Furthermore, the government shut down the shops, seized his weapons, and is seeking forfeiture of all assets associated with the drug trafficking activities.

In addition, the district court presented a lengthy summary of the evidence supporting its finding that Mr. Smith is a flight risk—including his failures to appear in the 1990's, large amounts of cash scattered in safes and safe deposit boxes (in bundles of $100 bills), Agent Stark's testimony that the DEA is unsure whether it has located all accounts and assets, and the lengthy possible prison sentence.

Deferring to the district court's factual findings as we must, our review of the entire record does not leave us "with the definite and firm conviction that a mistake has been committed." *See Gilgert*, 314 F.3d at 515 (internal quotation marks omitted). Granted, Mr. Smith produced some evidence supporting his release, but we are satisfied that the court carefully weighed both parties' positions. Besides, we cannot reweigh the evidence on clear-error review, *see id.* at 515-16, and a factfinder's choice between two permissible views of the evidence cannot be clearly erroneous, *see Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985). The district court considered the evidence presented in conjunction with the relevant

statutory factors and the detention presumption, and it made the required factual findings to support its pretrial detention order.  We affirm.

Entered for the Court<br>
Per Curiam