FILED
United States Court of Appeals
Tenth Circuit

March 24, 2017

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

CHRISTOPHER DWAINE
BILLINGSLEY, a/k/a Firewood,

     Defendant - Appellant.

No. 17-6023
(D.C. No. 5:15-CR-00258-F-4)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **O'BRIEN**, and **McHUGH**, Circuit Judges.
_____

Christopher Billingsley appeals from the district court's denial of his motion to

revoke the magistrate judge's order of pre-trial detention. Exercising jurisdiction

under 18 U.S.C. § 3145(c) and 28 U.S.C. § 1291, we affirm.

Mr. Billingsley is one of several persons who have been indicted with regard

to a longstanding, multi-drug distribution ring in Oklahoma City. He is facing

charges of conspiracy to possess with intent to distribute methamphetamine, cocaine,

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

and marijuana; conspiracy to commit money laundering; conspiracy to maintain drug-involved premises; money laundering (concealment); maintaining drug-involved premises; and being a felon in possession of firearms.

The defendants first were indicted in December 2015. That indictment remained sealed, however, and the defendants were not arrested until after a superseding indictment issued in August 2016. After holding a hearing, the magistrate judge ordered Mr. Billingsley and three other defendants detained pending trial. Eventually trial was set for October 2017.

In January 2017, Mr. Billingsley and the other defendants all moved to reopen the detention proceedings and to revoke the magistrate judge's detention orders. The district court granted the motions to reopen and held a two-day hearing. Under 18 U.S.C. § 3142(e)(3), the charges against Mr. Billingsley invoke a rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." The district court concluded that Mr. Billingsley had rebutted the rebuttable presumption. But it denied his motion to revoke because it was persuaded that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id.* § 3142(e)(1). Mr. Billingsley appeals.

Even with the rebuttable presumption, the government retains the burden of proof. *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003). The government must prove flight risk by a preponderance of the evidence and

2

dangerousness by clear and convincing evidence. *Id.* "We apply de novo review to mixed questions of law and fact concerning the detention or release decision, but we accept the district court's findings of historical fact which support that decision unless they are clearly erroneous." *Id.* at 613. "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on review of the entire record, is left with the definite and firm conviction that a mistake has been committed." *United States v. Gilgert*, 314 F.3d 506, 515 (10th Cir. 2002) (brackets and internal quotation marks omitted).

Mr. Billingsley argues that the district court clearly erred in finding that he is dangerous and a flight risk. We need not consider flight risk, however, because the government established, by clear and convincing evidence, that he presents a danger to the safety of any other person and the community.

While recognizing that it must conduct an individualized assessment at this stage, the district court made findings about the drug-trafficking organization (DTO) as context for the bail decision. It found that, conservatively, the DTO has distributed more than 1,000 pounds of marijuana, more than 100 pounds of methamphetamine, and more than 100 kilograms of cocaine. And the DTO used sophisticated means to avoid detection and used third parties to insulate the leaders, the Valdez brothers, from investigation by law enforcement. The district court found that Mr. Billingsley was a subordinate member of the DTO, but an important one. "[H]e, frankly, was one of the tools, apparently, by which the Valdez brothers insulated themselves from contact with individuals who might ultimately become

witnesses against the Valdez brothers." Aplt. App., Vol. 3 at 707-08. The district court identified "a propensity to violence on the part of Mr. Billingsley. That was inherent in his job for one thing within this [DTO]." *Id.* at 709.

Mr. Billingsley "does not dispute the seriousness of the charges," but he "struggles to understand how the record could plausibly support the court's detention order when the government did not arrest [him] for more than eight months after a warrant was issued for his arrest and still claim he is such a danger to the community." Aplt. Br. at 8-9. The government persuasively explains that the DTO was dangerous in the ordinary course, but unsealing the charges made the higher echelon particularly dangerous to potential witnesses. The December 2015 indictment was sealed, as was the August 2016 superseding indictment, so the charges were not generally known until after the defendants were arrested. Since their arrests, however, the defendants have had the opportunity to learn about the investigation and the potential witnesses.

Mr. Billingsley further asserts that the record lacks evidence regarding him as an individual, rather than as a member of the group. Citing § 3142(g)(3)(A) & (B), which directs the court to focus on the "history and characteristics of the person," he asserts that the court must "look at the *individual's* history and characteristics, not the general activity of an organization a person was part of," Aplt. Br. at 14. He states that the evidence was inadequate to show that he himself had violent tendencies (as distinguished from a gang that has violent tendencies), or that he would traffic or use drugs while awaiting trial.

4

Even though the statute speaks to "the person," we are not convinced that the district court should ignore evidence about the group as a whole. It is important context that this DTO is intensely feared. An investigating officer testified that "in every investigation I've had there's always a reluctance on the witness due to fear of their safety. However, in this, it was an overwhelming–every single witness we came across had this innate fear of this organization to a level which I had never experienced prior to investigating this organization." Aplt. App., Vol. 2 at 175.

In any event, the record reflects evidence concerning Mr. Billingsley individually. He was identified as an enforcer for the DTO, a position which itself involves violence. He has been indicted for possessing firearms illegally, including a semi-automatic rifle with a silencer. His criminal history is extensive and reflects a repeated disregard of court rules and orders. And although he was acquitted of a charge of involvement with murder in the mid-1990s, the district court heard testimony that the acquittal may have been influenced by witness intimidation by the Valdez brothers, Mr. Billingsley's longtime friends and co-defendants.

Mr. Billingsley further argues that the district court clearly erred in concluding that no condition or combination of conditions would reasonably assure the safety of the community. Asserting that "[t]here are numerous detention alternatives or release conditions the court could impose to ensure both the appearance and the safety of the community," he provides a comprehensive list of alternatives. Aplt. Br. at 17-18. He further argues that the record is not sufficiently developed as to the possible conditions.

5

Before the district court, Mr. Billingsley specifically requested only three conditions—GPS monitoring, nighttime curfew, and avoiding contact with co-defendants or potential witnesses. The investigating officer testified that GPS monitoring can be circumvented. Given Mr. Billingsley's alleged role in the DTO and the testimony about the degree of witness fear and potential intimidation in this case, as well as Mr. Billingsley's past inability to comply with court orders, it was not clearly erroneous for the district court to find that the proposed conditions were inadequate. *See United States v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir. 1991) (per curiam) (stating that the government met its burden of persuasion regarding the presumption of detention where "there was a strong evidentiary showing by the government that because of defendant's prior and ongoing criminal activity which involved large amounts of drugs, capacity for flight, and involvement with other drug traffickers and solicitation of violence, no conditions of release would assure defendant's appearance and the safety of the community").

The district court's decision is affirmed.

Entered for the Court
Per Curiam
