**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

LUIS M. ACOSTA-TAVERA,

    Defendant - Appellant.

No. 17-2050
(D.C. No. 2:17-MJ-00440-GBW-1)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **KELLY**, **BACHARACH**, and **McHUGH**, Circuit Judges.
_____

Luis M. Acosta-Tavera appeals the district court's order for detention pending trial on charges that he violated 21 U.S.C. § 846—an A-level drug trafficking offense.[1] Exercising jurisdiction under 18 U.S.C. § 3145(c) and 28 U.S.C. § 1291, we affirm.

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] An A-level drug trafficking offense is an offense that carries a mandatory minimum ten-year sentence. 18 U.S.C. § 3142(e)(3)(A).

## *Background*

On February 10, 2017, New Mexico transportation officers inspected a tractor-trailer occupied by two individuals at a temporary checkpoint. Upon finding several safety violations, the officers requested and obtained permission from the driver to search the vehicle. That search uncovered approximately 35 kilograms of cocaine, 26 kilograms of heroin and 1.08 grams of Fentanyl.

Agents with Homeland Security Investigations responded to the scene. The driver and passenger waived their Miranda rights, told the agents they knew they were transporting narcotics and agreed to cooperate by making a controlled delivery of the narcotics to their co-conspirators in New Jersey. A few days later, the driver met with the defendant at a predetermined location in Jersey City, New Jersey, to deliver 20 kilograms of the narcotics. When the defendant arrived, the driver asked him if he had the money. The defendant said yes, and opened the trunk of his car. Once the driver confirmed that the defendant had the money, he put a suitcase that contained 20 kilograms of narcotics (approximately 10 kilograms of real and sham cocaine and 10 kilograms of real and sham heroin) in the trunk. The defendant retrieved a black plastic bag containing $40,000 from "a rather sophisticated aftermarket compartment" in the trunk of his car, and gave it to the driver. Aplt. App. at 260. He left the scene and was quickly apprehended by law enforcement.

On February 14, 2017, a criminal complaint and arrest warrant were filed in the District of New Mexico, charging the defendant with violation of 21 U.S.C. § 846. That same day, the defendant appeared before a magistrate judge in New

Jersey, who ordered him detained.  He was then transferred to the District of New Mexico.  In late March 2017, he appeared before a magistrate judge in New Mexico and asked him to reconsider pretrial release.  Because a magistrate judge cannot reconsider another magistrate judge's detention or bail order, *see United States v. Cisneros*, 328 F.3d 610, 615 (10th Cir. 2003), a hearing was set before the district court judge.

At the hearing, the defendant proposed that he be released pending trial on the following conditions:  (1) posting a $400,000 bond secured by a Florida condominium co-owned by his brothers Carlos and Jose and two other Florida properties owned by a friend, Roberto Blanco; (2) surrendering his Dominican Republic passport; (3) living at home with his girlfriend of nine years, Biana Fernandez, and their two children (one who was Ms. Fernandez's child and the other his and Ms. Fernandez's child); (4) wearing an ankle-monitoring device that would prevent him from leaving the Eastern and Southern Districts of New York (where he lived and worked), except for court appearances in the District of New Mexico; and (5) submitting to the third-party custodianship of Ms. Fernandez.  He also established that he was a 31 year-old lawful permanent resident of the United States, with no criminal record and substantial family ties to the New York area, which included his child, mother and two brothers who lived there.  He also argued that there was little or no risk of flight to the Dominican Republic because his ties to that country were minimal.

3

At the conclusion of the hearing, the district court ordered the defendant detained:

So we've got an A-level criminal offense. There's a presumption. And that's where we begin.

The bail package put together by the defense is a good one. . . . And I reviewed all of the letters from family members that describe [the defendant] as just a wonderful guy. . . . [B]ut we have the fact that he is here as a legal permanent resident. He has "regularly," I think, would not be a stretch to say, returned [to the Dominican Republic]. And the most recent trip there was—he spent two weeks there, which would indicate to me some ties.

The strength of the case is ultimately where I am. And I'm viewing that just in terms of the charge, what's been described for me in the papers and described here today. . . .

. . . I think the defense has not overcome the presumption[] that the government has made out a significant case, they've carried their burden on flight risk and danger. Danger, of course, relating to the amount of the drugs, but flight risk, the fact that he's a legal permanent resident, he's facing a ten-year mandatory, and, as I said earlier, if I were facing that same situation, I'm not sure I wouldn't just prefer to go on somewhere else now.

So I am going to, for the those reasons stated in the Pretrial Services Report under Assessment of Nonappearance[2] and what I've said to this point, I'm going to deny the bail request for [the defendant].

Aplt. App. at 274-76.[3]

### *Standard of Review*

Pretrial detention is governed by 18 U.S.C. § 3142. Under § 3142(e), a

defendant can be detained only if, after a hearing, the court "finds that no condition

or combination of conditions will reasonably assure the appearance of the person as

---

[2] Pretrial Services recommended that the defendant be detained.
[3] The district court oral order was reduced to writing as required by 18 U.S.C. § 3142(i)(1).

4

required and the safety of any other person and the community." Relevant here, § 3124(e)(3)(A) establishes a rebuttable presumption that favors detention when the defendant is charged with an A-level drug trafficking offense.

As soon as the government invokes the presumption applicable to A-level offenses, "the burden of production shifts to the defendant" to come forward with "some evidence" to rebut the presumption. *United States v. Stricklin*, 932 F.2d 1353, 1354-55 (10th Cir. 1991) (per curiam). Regardless of the shifting burdens of proof, "the burden of persuasion regarding risk-of-flight and danger to the community always remains with the government," *id*., which "must prove risk of flight by a preponderance of the evidence . . . and . . . dangerousness to any other person or to the community by clear and convincing evidence." *Cisneros*, 328 F.3d at 616. But the presumption does not disappear simply because the defendant produces some evidence; instead, "the presumption [of risk-of-flight and danger to the community] remains a factor for consideration by the district court in determining whether to release or detain." *Stricklin*, 932 F.2d. at 1355.

There are four factors the district court should consider in determining whether there are conditions of release that will reasonably assure the appearance of the defendant as required and the safety of others and the community. These factors include: "(1) the nature and circumstances of the offense charged . . . ; (2) the weight of the evidence . . . ; (3) the history and characteristics of the [defendant], including . . . [his] community ties . . . ; and (4) the . . . danger to any person or the community that would be posed by the [defendant's] release." 18 U.S.C. § 3142(g).

5

"We apply de novo review to mixed questions of law and fact concerning the detention or release decision, but we accept the district court's findings of historical fact which support that decision unless they are clearly erroneous." *Cisneros*, 328 F.3d at 613.

*Analysis*

Applying the foregoing legal framework, we agree with the district court that the government established that no condition or conditions of release would reasonably assure the appearance of the defendant as required and the safety of any other person and the community.

The first factor to be considered is the nature of the offense. Here, the defendant downplays the seriousness of the charge by arguing that he did not have a weapon or physically harm anyone. But Congress did not distinguish between violations of 21 U.S.C. § 846 that are committed with weapons or violence and those that are not. Regardless, the crime carries a ten-year mandatory minimum sentence.

Next, the district court considered the weight of the evidence. Again, the defendant downplays the evidence by arguing that there is "no allegation of any underlying substantive offense. The only charge is for conspiracy." Aplt. Opening Br. at 14. But this ignores the court's finding "that the government has made out a significant case." Aplt. App. at 275. As the government explained:

> [T]he strength of the case is overwhelming here. The defendant arrived alone at the meet. He was the driver and sole occupant of a vehicle registered to him. When he arrived at the meet, [the driver] a cooperating defendant asked the defendant if he had the money . . . [and] popped the trunk of his own vehicle and then he accessed a rather sophisticated

6

aftermarket compartment . . . and retrieved a black plastic bag that contained $40,000 in cash.

*Id*. at 259-260.

The third factor required the district court to look at the history and characteristics of the defendant, including his ties to the community. Despite the defendant's argument that he would never leave his girlfriend, child, mother, and brothers behind in New York, there was evidence that the defendant had ties to the Dominican Republic and had "regularly" returned there. *Id*. at 275. These facts, coupled with the high likelihood that the defendant would be unwilling to serve a minimum ten-year sentence and then be deported, supports the court's finding, by a preponderance of the evidence, that the defendant was a flight risk.

Last, the district court's finding that the defendant's release would pose a danger to other persons or the community is supported by clear and convincing evidence. In this regard, we have recognized that Congress's "concern about safety is to be given a broader construction than the mere danger of physical violence." *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989) (per curiam). Indeed, "the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the safety of any other person or the community." *Id*. (internal quotation marks omitted). Here, the government argued that the defendant had a longstanding relationship with the drug supplier, otherwise he would not have been able to obtain nearly $1 million worth of drugs for a $40,000 down payment. *See* Aplt. App. at

The district court's finding that the defendant was a danger to others and the community is supported by clear and convincing evidence.

### *Conclusion*

We affirm.  We deny Appellee's motion to supplement the record as unnecessary.

Entered for the Court
Per Curiam

8