**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 21, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellant,

v.

JAMSHID MUHTOROV,

    Defendant - Appellee.

No. 17-1220
(D.C. No. 1:12-CR-00033-JLK-1)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **KELLY**, **LUCERO**, and **HOLMES**, Circuit Judges.
_____

The defendant, Jamshid Muhtorov, is a refugee from Uzbekistan who has been charged with conspiracy and attempt to provide material support to a designated terrorist organization, the Islamic Jihad Union (IJU), in violation of 18 U.S.C. § 2339B. He has been detained pending trial since his arrest in 2012. At Muhtorov's request, the district court recently continued his trial until March 12, 2018, so it can take place after his co-defendant, Bakhtiyor Jumaev, is tried in January.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Muhtorov has filed three motions for pretrial release—in 2012, 2015, and 2017. The district court denied his first two motions, but on June 23, 2017, it issued an order allowing his release ("the June 23 order"), subject to home detention with an ankle bracelet and various other conditions. The government now challenges the June 23 order, which we have stayed pending resolution of this appeal. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3145(c), we reverse.

## I.  Background

### A.  Facts

Muhtorov came to the United States from Uzbekistan as a refugee in 2007. The government became aware of him through his year-long e-mail communications with an administrator of the IJU's official website. The IJU has been designated as a foreign terrorist organization since 2005. It is an ally of Al-Qaeda and the Taliban and has engaged in fights against United States troops in Afghanistan.

The government intercepted Muhtorov's communications during surveillance under the Foreign Intelligence Surveillance Act of 1978 (FISA), 50 U.S.C. §§ 1801-1811, 1821-1829. In them, Muhtorov expressed his "support of the [IJU], his profession of allegiance to them, and his profession of wanting to provide whatever support he could to them." App., Vol. 4 at 867. In particular, he discussed purchasing portable satellite equipment and sending $300 in cash, which he had received from his co-defendant, Jumaev. Further, he swore his "Bay'ah," or allegiance, to the IJU and said "he would do whatever is necessary for them or whatever they asked of him, even to the point of death." *Id.* at 903. Muhtorov also

2

discussed martyrdom with Jumaev, and the men said they would meet in heaven. *Id.* at 920. Additionally, in e-mail and phone conversations, they talked about joining the "wedding" (a common code word for the jihadist movement, martyrdom operations, or an armed struggle) and referenced the "wedding house," and the "wedding gift" (which typically refers to financial support). The men also discussed going to Turkey to study at a madrassa, or religious school.

In January 2012, Muhtorov was arrested at the Chicago airport, en route to Istanbul, Turkey. He had purchased a one-way ticket. At the time of his arrest, he had almost $3,000 in cash, two new iPhones in their original packaging, and a new iPad in the same condition. His own phone contained videos showing combat against coalition forces, instructions on making improvised explosive devices, and graphic images of jihadists beheading captured men.

A grand jury indicted Muhtorov for conspiracy and attempt to provide material support to a designated foreign terrorist organization. He has been detained pending trial since his arrest for the past five and one-half years. The delay in proceeding to trial is the result of a confluence of factors, including his motions to suppress evidence obtained under FISA and other extensive pretrial motions; threats to a key government witness, which necessitated extensive discussions about the conditions of that witness's testimony; issues stemming from the severance of the trials; and the need to translate voluminous documentary evidence.

3

**B.      Procedural History**

Muhtorov first sought release in February 2012 at a detention hearing before the magistrate judge, which centered on testimony by an FBI agent. The magistrate judge denied the motion for release after concluding (1) by a preponderance of the evidence, that no condition or combination of conditions of release would reasonably assure Muhtorov's appearance at future court proceedings; and (2) by clear and convincing evidence, that Muhtorov presents a risk to other persons and the community and that no condition or combination of conditions of release would reasonably assure the community's safety. The district court affirmed.

Muhtorov next sought pretrial release in July 2015 through a motion for reconsideration of bail based on the extraordinary length of pretrial detention and the due process implications thereof. By then, Muhtorov had been in custody for three and one-half years, though his motion acknowledged the lack of any speedy trial issues and conceded the pretrial process had taken a long time due to the case's complexity. The government objected that Muhtorov could not reopen the detention hearing because he had not presented any new information that was not known to him at the time of the detention hearing and that has a material bearing on whether there are conditions of release that will reasonably assure his appearance and the safety of other persons and the community, as required by 18 U.S.C. § 3142(f). The district court denied the second motion for release after concluding that Muhtorov presents a "*bona fide*," "serious flight risk." App., Vol. 3 at 475. It cited "[t]he serious nature of the charges"; "the severity of the penalties for conviction" (15 years per count,

4

with a possibility the sentences could run consecutively for a total of 60 years);[1] "the fact he was apprehended while in the process of leaving the country and destined for the Middle East carrying money and electronic equipment capable of being used by a terrorist organization"; and "the threat of violence implicit in these acts." *Id.* And it opined that the trial delays were occasioned, to some degree, by the complexity of the case, numerous motions filed by Muhtorov, and translation issues—not by lack of diligence or zeal by either party.

That brings us to the third motion for pretrial release and the June 23 order granting it. That motion was precipitated by a continuance of Jumaev's trial, which spurred Muhtorov to request his own continuance so as to proceed second and call Jumaev as a defense witness. The district court reopened Muhtorov's detention hearing under 18 U.S.C. § 3142(f)(2) based on the following new information:

- The government dismissed counts 5 and 6 of the indictment, which charged that Muhtorov and Jumaev conspired to provide material support and resources to the IJU in the form of personnel (namely, Abdullo Jumaev) in violation of 18 U.S.C. §§ 2339A, 2339B.

- The "actual factual basis" for the nature of the alleged crimes and the flight and danger risk Muhtorov poses, App., Vol. 9 at 1934, is now based on more than one FBI agent's testimony. Three evidentiary hearings show the government's case may be weaker and Muhtorov's defenses stronger, so "[t]here is reason to believe . . . that Mr. Muhtorov has been invested with a sense of a direction and a reason to stay and see the trial of his case through." *Id.* at 1934-35.

- The district court reassessed the factors listed in 18 U.S.C. § 3142(g)(1) and (2), as detailed below, and determined the evidence "suggest[s] Mr. Muhtorov's bark was more serious than his bite." *Id.* at 1936.

_____

[1] Since the time of Muhtorov's indictment, the maximum prison term listed in § 2339B has since been amended from 15 years to 20 years.

5

Ultimately, the district court found that "a combination of conditions for release can be crafted that will assure [Muhtorov's] attendance at [trial] and protect the safety of the community." *Id.* at 1935. It imposed those conditions of release at a hearing on June 26, 2017. Restrictions include GPS ankle monitoring and a 24-hour lockdown at Muhtorov's home, though he may leave his home for three approved exceptions: (1) religious purposes (i.e., weekly mosque services); (2) meetings with his attorneys; and (3) medical appointments. In addition, Muhtorov has surrendered his passport and cannot have access to internet-capable devices that allow access to social media. The probation office will monitor his electronics as well.

The government filed this appeal and sought an emergency stay of the release order, which we granted.

## II.    Legal Framework

The Bail Reform Act sets out the framework for evaluating whether pretrial detention is appropriate. *See* 18 U.S.C. § 3142. A defendant may be detained pending trial only if a "judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id.* § 3142(e)(1). To make such a finding, the judicial officer must hold a detention hearing per 18 U.S.C. § 3142(f). The factors relevant to considering whether there are release conditions that can ensure the defendant's appearance and the safety of the community are: (1) the nature and circumstances of the offense, including whether the offense is a federal crime of terrorism; (2) the weight of the evidence; (3) the defendant's history and

6

characteristics; and (4) the nature and seriousness of the danger the defendant would pose to the community if released. *Id.* § 3142(g).

In this case, the charges against Muhtorov establish a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." *Id.* § 3142(e)(3)(C).[2] It is Muhtorov's burden to rebut the presumption. *United States v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir. 1991) (per curiam) ("The defendant's burden of production is not heavy, but some evidence must be produced."). "However, the burden of persuasion regarding risk-of-flight and danger to the community always remains with the government." *Id.* at 1354-55. "The government must prove risk of flight by a preponderance of the evidence, and it must prove dangerousness to any other person or to the community by clear and convincing evidence." *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003) (citations omitted). Having twice found the government met this burden, the district court changed course in the June 23 order.

We review the district court's ultimate release decision de novo because it presents mixed questions of law and fact; however, we review the underlying findings of historical fact for clear error. *Id.* at 613. "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on review of the entire record, is left with the definite and firm conviction that a mistake has been

---

[2] A rebuttable presumption arises under this provision where the defendant faces charges for certain offenses listed in 18 U.S.C. § 2332(g)(5)(B) that carry sentences of ten years. Muhtorov's alleged crime—a violation of 18 U.S.C. § 2339B—is among the designated offenses.

committed." *United States v. Gilgert*, 314 F.3d 506, 515 (10th Cir. 2002) (brackets and internal quotation marks omitted). We review the district court's findings with significant deference, cognizant that "our role is not to re-weigh the evidence." *Id.* at 515-16.

### III.    Discussion

### A.    The Statutory Presumption of Detention

The government faults the district court for not "addressing the presumption of detention" and "not mak[ing] a specific finding that the defendant has rebutted the presumption." Mem. Br. at 11-12. We have previously held that "[e]ven if a defendant's burden of production is met, the presumption remains a factor for consideration by the district court in determining whether to release or detain." *Stricklin*, 932 F.2d at 1355 (citing *United States v. Cook*, 880 F.2d 1158, 1162 (10th Cir. 1989)). But the district court did not need to use a set of "magic" words when considering the presumption, as the government intimates. We deemed it "significant[]" in *Stricklin* that "there was no finding that defendant was successful in rebutting" the § 3142(e) detention presumption, 932 F.2d at 1355. But we emphasized that the government made a "strong evidentiary showing" while noting that the defendant offered no documentary evidence and the district court made no findings whatsoever on the strength of the defendant's showings. *Id.* at 1354-55. Likewise, in *Cook*, we found error when the district court "completely skipped over" the rebuttable presumption of detention in denying a motion to revoke release under 18 U.S.C. § 3148(b). 880 F.2d at 1162.

8

Here, by contrast, it is clear the district court was aware of, and guided by, the rebuttable presumption. This was the third motion for pretrial release, and the parties and court discussed the presumption in detail with respect to all three motions; indeed, it played a role in Muhtorov's continuing detention. And the district court explicitly referenced the presumption at the outset of the June 23 order. *See* App., Vol. 9 at 1929. It also operated within the framework of the presumption when it made detailed findings on the ways in which the circumstances had changed since its original finding that no conditions could guarantee Muhtorov's appearance at trial or the community's safety. For these reasons, we reject the government's argument that the district court did not give any weight to the rebuttable presumption or make appropriate findings as to whether Muhtorov rebutted the presumption.

## B. The § 3142(g) Factors

Next, we turn to the government's argument that the district court did not identify significant evidence to overcome the statutory presumption and the evidentiary record—both of which show that no conditions of release can reasonably assure Muhtorov's appearance at trial or the safety of the community.

### 1. Nature and Circumstances of Offense Charged

The first factor is "the nature and circumstances of the offense charged, including whether the offense is . . . a Federal crime of terrorism." 18 U.S.C. § 3142(g)(1). Muhtorov has been charged with knowingly providing support or resources to a foreign terrorist organization, or attempting or conspiring to do so, in violation of 18 U.S.C. § 2339B, which is a federal crime of terrorism. This factor has

9

remained constant: The district court repeatedly recognized the serious nature of the charges in resolving all three of Muhtorov's motions for pretrial release.

Likewise, the circumstances surrounding Muhtorov's arrest have not changed. He expressed his willingness to support the IJU in multiple e-mails and phone conversations and was arrested while attempting to board a one-way flight to Turkey, in possession of cash and electronic equipment. He resigned from his job shortly before the trip. And he told his daughter in the preceding months that he might not see her again on earth, but he would see her in heaven if she was a good Muslim girl.

### 2. Weight of the Evidence

The second factor—"the weight of the evidence against the person," 18 U.S.C. § 3142(g)(2)—was the primary focus of the June 23 order. The district court's treatment of this factor changed dramatically from its earlier analyses.

The district court noted the government's dismissal of the last two counts of the indictment. It then reassessed the strength of the evidence against Muhtorov based on new or changed information gleaned from three hearings: (1) a January 2017 suppression hearing that demonstrated some weaknesses in the government's translations of the evidence and its linguists; (2) a February 2017 *James* hearing that gave a thorough overview of the government's evidence to support its conspiracy claims; and (3) a March 2017 *Daubert* hearing from which it can be inferred that the IJU's administrator did not take Muhtorov seriously and that Muhtorov left for Turkey without a definitive plan with anyone from the IJU. Ultimately, the district

10

court concluded that the evidence against Muhtorov is not as strong as it seemed to be at the initial detention hearing.

To support its revised assessment, the district court also cited expert testimony that may undermine the government's theory that the madrassa that Muhtorov planned to attend was a known conduit to the IJU. It focused on the fact that Muhtorov's oath to the IJU was made but not accepted. And it observed that "large majorities" of the Muhtorov-Jumaev conversations involved "prattle and topics other than terrorism or plans to support it." App., Vol. 9 at 1936. Pointing to all of these purported deficiencies, the district court concluded that the evidence now "suggest[s] Mr. Muhtorov's bark was more serious than his bite," *id*. Even so, the district court expressed "concern[s] about witness intimidation and the actions of Mrs. Muhtorov and others having previously attempted to contact" potential witnesses. *Id.* at 1935. It also acknowledged the government "may have thwarted an actual plan to provide smartphones and services to the IJU." *Id.* at 1936.

### 3. Defendant's History and Characteristics

The third factor is "the history and characteristics of the person." 18 U.S.C. § 3142(g)(3). It encompasses the defendant's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." *Id.* § 3142(g)(3)(A). It also takes into account whether the defendant was being punished for another offense at the time of his arrest. *Id.* § 3142(g)(3)(B).

11

The district court generally referenced Muhtorov's "work history" as a commercial truck driver. App., Vol. 9 at 1936. It also described his "family and community ties" as "substantial," focusing on his relationship with his wife. *Id.* The district court stated that his wife has lived and worked in the community for ten years, as Muhtorov did for five years without incident before his arrest. *Id.* And it noted that his wife has visited him during his detention, the couple now has a third child born during his incarceration, and thus "[t]heir familial relationship has deepened." *Id.*

4. **Nature and Seriousness of the Danger to Any Person or the Community**

The fourth factor is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). As explained above, Muhtorov is presumed to be a danger to the community because of the nature of his charges. *See id.* § 3142(e). This presumption is rebuttable, but it remains in the case as a factor militating against release, to be weighed along with evidence related to the § 3142(g) factors.

The district court's reassessment of this factor is closely tied to its revised appraisal of the second factor. It suggests that since the evidence against Muhtorov is not as strong as the district court originally appraised it to be, Muhtorov may not be as dangerous either.

12

### 5. Analysis

We discern no clear error in the individual factual findings listed above. But reviewing the overall release decision de novo, we disagree with the district court's assessment of the implications and significance of those findings.

It does not appear that the district court's release decision turned on its assessment of the first and third factors. Its findings on those factors deviated from its earlier findings in minor respects only. The bulk of the June 23 order was devoted to the district court's analysis of the second and fourth factors, which seems to be the impetus for the release order. The district court changed its position as to the propriety of release based largely on its revised assessment of the strength of the government's evidence against Muhtorov, which in turn affected its opinion as to the danger Muhtorov presents to the community and the likelihood he will appear for trial. Its analysis suffers from several major flaws, however.

First, the district court cited newly exposed weaknesses in the government's translations and linguists as a new development that undermines the strength of the government's case even though any implications are unclear. Testimony at the January 2017 suppression hearing revealed that one of the government's translators listed his Interagency Language Roundtable test score for Uzbek as a "2 plus" on his resume when it was actually a "2." A level-two score may not be ideal for translations at a professional level; however, a government expert testified that "almost all of the language that occurs in regular life is at a level 2," including "routine day-to-day conversation." App., Vol. 8 at 1525. The court did not identify

13

what material inculpatory statements, if any, depend on the translator's interpreting skills. At least some of the post-arrest statements can be proven without his translations, such as Muhtorov's admissions as to the telephone number and e-mail addresses he used to communicate with the IJU and the websites he visited.

Second, the district court concluded that testimony from the *James* and *Daubert* hearings—which focused on the IJU's failure to accept Muhtorov's overtures or take him seriously—"gave rise to additional inferences that may be favorable to" Muhtorov and "undermined the seriousness or depth" of the co-defendant's conspiracy. App., Vol. 9 at 1934, 1936. This focus on the IJU's actions is misplaced. Muhtorov is charged, in part, with *conspiring* to provide and an *attempt* to provide material support to terrorists. Even assuming the testimony from these hearings weakens the government's evidence that Muhtorov *actually* provided material support to the IJU, it does not impact the conspiracy and attempt components of the offense. Likewise, any purported disinterest from the IJU does not minimize his coordinated efforts with his alleged co-conspirator.

Third, for the same reasons, we reject the district court's conclusion that Muhtorov is less dangerous because the IJU had not accepted him and he had not formulated a concrete plan to serve the IJU before his attempted departure. Here, too, the significant concern of our dangerousness inquiry is Muhtorov's alleged intent to further IJU's terrorism and the concrete, affirmative steps that he took in manifesting his intent. Nor does the timing of his statement to his daughter, which Muhtorov emphasizes took place months before his arrest, alter our conclusion. The

14

implications of that statement still evince a substantial risk of community danger in light of his ongoing communications with the IJU and Jumaev at the time.

Simply put, the evidence does not support the district court's assessment that Muhtorov no longer poses a danger or presents a flight risk that cannot be minimized by strict release conditions. Muhtorov has professed that he is willing to fight and die for his cause, and he took affirmative steps to further that goal. The contents of his phone reflect Islamic extremist tendencies. And the government alleges that his brother, Hurshid Muhtorov, fought in Syria for the Islamic State in the recent past and has attempted to intimidate a witness in this case.

The government has shown by a preponderance of the evidence that Muhtorov would be a flight risk, even with the release conditions imposed by the district court. And it has shown by clear and convincing evidence that the conditions of release, though restrictive, would not reasonably assure the safety of the community.

## IV.    Conclusion

The temporary stay of the June 23 order, which was granted on July 7, 2017, is now lifted. For the reasons set forth above, we reverse the district court's release order dated June 23, 2017. Muhtorov shall be detained pending trial.

Entered for the Court
Per Curiam