**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 6 2003**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

LORENA CISNEROS,

    Defendant - Appellant.

No. 03-2009

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. CR-01-1709-MCA)**

---

Dorothy C. Sanchez, Albuquerque, New Mexico, for Defendant - Appellant.

Steven Craig Yarbrough, Assistant United States Attorney (David C. Iglesias, United States Attorney, and Laura Fashing, Assistant United States Attorney, on the brief), Albuquerque, New Mexico, for Plaintiff - Appellee.

---

Before **SEYMOUR**, **EBEL**, and **HARTZ**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

Lorena Cisneros appeals an order of the United States District Court for the District of New Mexico upholding the determination by a magistrate judge of that court that Cisneros be detained pending trial. By ordering her detention pending trial, the New Mexico district court revoked a prior order of a federal magistrate judge in Arizona that had permitted Cisneros's conditional release until trial. Cisneros argues on appeal that the New Mexico district court did not have the authority to reconsider the original release order and, even if it did, it should have concluded as a result of its review under the Bail Reform Act, 18 U.S.C. § 3141 et seq., that Cisneros was entitled to conditional release pending trial. We hold that the New Mexico district court was authorized to reconsider the Arizona magistrate judge's release order, and we affirm the district court order denying pretrial release to Cisneros in this case.

**I.**

This case arises out of the government's investigation and pending prosecution of an alleged criminal enterprise known as the Cisneros Organization. The Cisneros Organization has been under investigation by state and federal authorities since at least 1995, and members of the Organization are alleged to have committed murder; manufactured and distributed methamphetamine, cocaine, and marijuana; laundered money generated by criminal activity; possessed and sold stolen vehicles; and tampered with and intimidated witnesses against them in

criminal prosecutions, including through the murder of such witnesses. Indeed, in 1998, state prosecutors were forced to file a motion dismissing their case against the Cisneros Organization after three prosecution witnesses were murdered. The Cisneros Organization allegedly operates in New Mexico and Arizona, and one of its leaders is Luis Cisneros, the husband of Lorena Cisneros ("Cisneros"), the appellant in the instant case.

On September 19, 2002, a federal grand jury in New Mexico returned a seventeen-count, second superseding indictment against nine alleged members of the Cisneros Organization. Lorena Cisneros was named in two counts of the indictment: the counts alleging a Racketeer Influenced and Corrupt Organizations Conspiracy (RICO conspiracy) (count two), 18 U.S.C. § 1962(d), and a Stolen Vehicle Conspiracy (count fifteen), 18 U.S.C. §§ 511, 2312, 2313, 2321. Among the specific predicate acts of racketeering activity underlying the RICO conspiracy charge was an alleged conspiracy to murder a potential witnesses against the Cisneros Organization, Jose Moreno, Sr. Moreno and his son were murdered in their home on January 12, 2000.

Lorena Cisneros was arrested on September 20, 2002, in Phoenix, Arizona, where she is a resident, on a warrant issued by the New Mexico district court. Pursuant to Fed. R. Crim. P. 40, Cisneros was brought before a magistrate judge in Phoenix, the government moved to have her detained pending trial, and a

detention hearing was held there by Magistrate Judge Lawrence O. Anderson over several days in September and October 2002. On October 4, 2002, Judge Anderson issued an order denying the government's request that Cisneros be detained until trial. Judge Anderson concluded that, under the Bail Reform Act, 18 U.S.C. § 3142(e)–(g), the government had not sustained its burden of proof by a preponderance of the evidence that Cisneros was a serious flight risk, nor had it sustained its burden of proof by clear and convincing evidence that Cisneros was a danger to the community. Accordingly, Judge Anderson ordered her released on her own recognizance, but he imposed conditions on her release. The conditions included restricted travel, prohibitions on communicating with certain individuals believed to be part of the Cisneros Organization, and required drug testing. Judge Anderson also ordered Cisneros to appear in New Mexico district court to be arraigned on the charges in the indictment.

Cisneros appeared for arraignment before Magistrate Judge Don J. Svet in Albuquerque, New Mexico on October 24, 2002. At that appearance, Judge Svet adopted the release conditions imposed by Judge Anderson, and Cisneros remained free pending trial.

Approximately one month later, on November 27, 2002, the government filed a motion with the New Mexico district court seeking an order revoking Cisneros's release order and detaining her pending trial. The government claimed

that following the Arizona detention hearing it had learned of Cisneros's personal involvement in the conspiracy to murder Jose Moreno, Sr. The motion was heard by Judge Svet, and a hearing was held on December 6, 2002. Judge Svet considered the transcripts of the Arizona detention hearing before Judge Anderson and additional evidence introduced by the government. The new evidence included a transcript of Cisneros's grand jury testimony; a letter Cisneros allegedly retrieved from a car dealer in El Paso, Texas; transcripts of phone calls between Cisneros and her husband, Luis Cisneros; and additional testimony from Detective Armando Saldate, who had testified at the Arizona detention hearing. The government argued that this evidence indicated that Cisneros was aware of, and assisted her husband in completing, the plan to murder Jose Moreno, Sr. At the conclusion of the hearing, Judge Svet found that Cisneros was both a flight risk and a danger to the community and ordered that she be detained pending trial.

Cisneros appealed Judge Svet's order, and that appeal was heard by New Mexico District Judge M. Christina Armijo at a hearing on December 13, 2002. On December 23, 2002, Judge Armijo issued an order affirming Judge Svet's detention order. Judge Armijo, reviewing the detention order de novo, found that the government had proved by clear and convincing evidence that no conditions of release could be imposed on Cisneros that would reasonably assure the safety of the community and that the government had proved by a preponderance of the

evidence that Cisneros posed a serious risk of flight such that no conditions of release would reasonably assure Cisneros's presence at trial. Cisneros, therefore, remained in custody.

Cisneros timely filed a notice of appeal to this Court, and we have jurisdiction pursuant to 18 U.S.C. § 3145(c) and 28 U.S.C. § 1291.

## II.

Cisneros advances two arguments in support of her contention that her detention order should be reversed. First, she argues that the New Mexico district court lacked the authority under 18 U.S.C. § 3145(f) to reconsider the original release order entered by the federal magistrate judge in Arizona. This is a question of the construction and applicability of a federal statute that we review de novo. See United States v. Telluride Co., 146 F.3d 1241, 1244 (10th Cir. 1998). Second, she argues that even if review by the New Mexico district court was appropriate, that court erred when it determined that she should be detained under the Bail Reform Act, 18 U.S.C. § 3142. Analysis of this claim involves questions of fact and mixed questions of law and fact. We apply de novo review to mixed questions of law and fact concerning the detention or release decision, but we accept the district court's findings of historical fact which support that decision unless they are clearly erroneous. See United States v. Stricklin, 932 F.2d 1353, 1355 (10th Cir. 1991)(per curiam); United States v. Montalvo-Murillo,

876 F.2d 826, 830 (10th Cir. 1989) (per curiam), rev'd on other grounds, 495 U.S. 711 (1990).

**A.**

We consider first whether the New Mexico district court had the authority to revoke the Arizona magistrate judge's release order and enter its own detention order. The Bail Reform Act of 1984 provides two avenues through which a release or detention order can be reconsidered prior to review on appeal by a court of appeals. The first avenue is provided by 18 U.S.C. § 3142(f), which specifies the hearing procedure that must be followed before a defendant is detained:

> **(f) Detention hearing.**—The judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community . . . .
> . . . .
> The hearing may be reopened before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue of whether there are conditions of release that will reasonably assure the appearance of [the defendant] as required and the safety of any other person and the community.

By its terms, this section applies to reconsideration of a detention or release order by the same judicial officer who entered the initial order. In addition, reconsideration is permissible under this section only when there is new

information that would materially influence the judgment about whether there are conditions of release which will reasonably assure that the defendant will not flee and will not harm any other person or the community.

The second avenue is provided by 18 U.S.C. § 3145(a) and (b). These sections permit the government or a defendant to file a "motion for revocation" of a release or detention order. However, such a motion is only permissible "[i]f a person [has been] ordered released [or detained] by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court . . . ." 18 U.S.C. § 3145(a), (b). Section 3145 also requires that the revocation motion be filed with the court having original jurisdiction over the offense, but unlike § 3142(f), § 3145 does not require that new information be available before a release or detention order can be reconsidered and revoked. Id.

The government's motion seeking revocation of Cisneros's conditions of release did not cite any statutory provision as the basis for the motion. The parties have assumed in their arguments before us that § 3142(f) provided the basis for the government's motion seeking revocation of the Arizona release order. Cisneros and the government argue over whether the evidence introduced by the government before Judge Svet constituted new, material information as required by § 3142(f) before a detention hearing can be reopened. We conclude,

however, that § 3142(f) could not have been the basis for the government's revocation motion.

Revocation of a prior release order under § 3142(f) is available only when the review of a detention or release order is being conducted by the same judicial officer who entered the order and when new, material information is available. Here, the release order that was challenged by the government is the one entered by Judge Anderson in Arizona, and it was reviewed by different judicial officers, Magistrate Judge Svet and District Judge Armijo, in New Mexico. Therefore, § 3142(f) could not have been the basis of the government's motion or of the review by the New Mexico district court.

Section 3145(a), however, is an appropriate basis for the government's motion. That section states:

> **(a) Review of a release order.**—If a person is ordered released by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court—
> **(1)** the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order . . . .

18 U.S.C. § 3145(a)(1). This section covers precisely the circumstances of this case. Cisneros was ordered released by Judge Anderson in Arizona, who is "a magistrate judge, or . . . a person other than a judge of a court having original jurisdiction over the offense . . . ." Id. The government filed its revocation

- 9 -

motion in the United States District Court for the District of New Mexico, which is "the court having original jurisdiction over the offense" because the District of New Mexico is the district in which the indictment charging Cisneros was returned and in which the prosecution is pending. See United States v. El-Edwy, 272 F.3d 149, 154 (2d Cir. 2001); United States v. Torres, 86 F.3d 1029, 1031 (11th Cir. 1996). Therefore, we construe the government's motion as having been made pursuant to § 3145(a)(1). See United States v. Jones, 804 F. Supp. 1081, 1090 (S.D. Ind. 1992) (construing government's revocation motion before Indiana district court as having been made pursuant to § 3145(a), where defendant was indicted in Indiana, the original detention hearing was held in the district of arrest by a magistrate judge in Arizona, a second detention hearing was held after arraignment by a magistrate judge in Indiana, and an Indiana district court reviewed the prior hearings before making its own detention ruling).

Although the government properly filed its revocation motion in the New Mexico district court, the review of the Arizona release order was conducted in the first instance by Magistrate Judge Svet. Only after Judge Svet entered his detention order, and Cisneros appealed it, did District Judge Armijo consider the government's motion. This is improper procedure for processing a § 3145(a) motion. The motion should be considered and ruled upon in the first instance by a district judge in the court of original jurisdiction. See United States v. Evans,

- 10 -

62 F.3d 1233, 1239 (9th Cir. 1995) (Wallace, C.J., concurring) (stating in a case involving review under § 3145 of magistrate judge's detention order that "[o]nly that district court [i.e., the district court with original jurisdiction over the offense] has the authority to review the magistrate judge's order"); cf. United States v. Cheeseman, 783 F.2d 38, 41 (2d Cir. 1986) ("[T]he appropriate course for the Government would have been to await the setting of release conditions and the issuance of release orders by the Magistrate, and then pursue its appellate rights, initially to the District Judge, pursuant to 18 U.S.C. § 3145(a) . . . .").

The text of § 3145(a) supports the conclusion that a motion to revoke a magistrate judge's release order should be ruled on directly by a district judge. We agree with the reasoning of a district court from another circuit that explained:

> It is clear from the wording of Section 3145(a) that "a court having original jurisdiction over the offense" must be interpreted as the district judge assigned to the case . . . [T]hat section suggests a hierarchy for reviewing a magistrate's decision. In other words, Section 3145(a) authorizes a district judge to review a decision made by a magistrate judge, but it does not confer the same authority upon a magistrate judge in the charging district when the challenged order was issued by a magistrate judge in the arresting district.

United States v. Johnson, 858 F. Supp. 119, 122 (N.D. Ind. 1994). The hierarchy suggested by § 3145(a) is consistent with the ultimate decision-making power and continuing jurisdiction over the actions of magistrate judges that district court judges possess. See United States v. First Nat'l Bank of Rush Springs, 576 F.2d

- 11 -

852, 853 (10th Cir. 1978) (per curiam); United States v. Maull, 773 F.2d 1479, 1486 (8th Cir. 1985) (en banc) (stating, in the context of decision-making under § 3145(a) and (b), that "'the magistrate acts subsidiary to and only in aid of the district court,' and that 'the entire process takes place under the district court's total control and jurisdiction.'") (quoting United States v. Raddatz, 447 U.S. 667, 681 (1980)).  As we read § 3145(a), therefore, Judge Svet had no authority to rule on the government's motion to revoke the Arizona magistrate judge's release order.

This error in procedure does not, however, affect the outcome of this case. Because Judge Armijo reviewed Judge Svet's detention order de novo and considered all of the evidence that had been offered to that point—including both the evidence submitted to Magistrate Judge Anderson in Arizona and Magistrate Judge Svet in New Mexico—the fact that Judge Svet ruled on the matter is irrelevant.[1]  In fact, it is within the district court's authority to review a magistrate's release or detention order sua sponte.  See United States v. Spilotro,

---

[1] The standard of review for the district court's review of a magistrate judge's detention or release order under § 3145(a) is de novo.  See, e.g., United States v. Rueben, 974 F.2d 580, 585–86 (5th Cir. 1992) ("When the district court acts on a motion to revoke or amend a magistrate's pretrial detention order, the district court acts *de novo* and must make an independent determination of the proper pretrial detention or conditions for release."); Maull, 773 F.2d at 1481 (stating that district court's review of magistrate judge's order setting bond was de novo).

786 F.2d 808, 815 (8th Cir. 1986).  Therefore, we treat the government's motion as having been made properly to Judge Armijo in the first instance.  See Jones, 804 F. Supp. at 1090.  Accordingly, we conclude that the district court had authority under § 3145(a) to review the Arizona release order and to revoke that order upon proper findings.

**B.**

Having determined that the district court had the authority to reconsider the Arizona release order, we now consider whether the district court properly concluded that the Arizona order should be revoked and Cisneros detained pending trial.

Under the Bail Reform Act, a defendant may be detained pending trial only if a judicial officer finds "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e); id. § 3142(b), (c).  A judicial officer may make such a finding only after holding a hearing according to the procedures specified in § 3142(f), and the government bears the burden of proof at that hearing.  The government must prove risk of flight by a preponderance of the evidence, see, e.g., United States v. Xulam, 84 F.3d 441, 442 (D.C. Cir. 1996) (per curiam); United States v. Quartermaine, 913 F.2d 910,

917 (11th Cir. 1990), and it must prove dangerousness to any other person or to the community by clear and convincing evidence, 18 U.S.C. § 3142(f).

"[I]n determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community," the judicial officer must consider:

> **(1)** The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
> **(2)** the weight of the evidence against the person;
> **(3)** the history and characteristics of the person, including—
> > **(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> > **(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> **(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). If, after the hearing and consideration of the above factors, a judicial officer orders that a defendant be detained, the order must "include written findings of fact and a written statement of the reasons for the detention." Id. §3142(i)(1); see also Fed. R. App. P. 9(a)(1) ("The district court must state in writing, or orally on the record, the reasons for an order regarding the release or detention of a defendant in a criminal case.").

- 14 -

The Arizona magistrate judge held a § 3142(f) hearing for Cisneros and a co-defendant and, after stating its factual findings, concluded that

> the Government has failed to show reliable evidence other than the subject indictment and the Defendants' involvement as a major facilitator or a closely trusted individual [sic] for the Cisneros criminal organization in its effort to demonstrate by clear and convincing evidence that the Defendants are a danger to the community or by a preponderance of the evidence that they are "serious risk[s]" [18 U.S.C. § 3142(f)(2)(A)] to flee.

Order of Oct. 4, 2002, at 6 (brackets in original).  Although in conducting her de novo review Judge Armijo considered the evidence submitted during the Arizona hearing, she also held her own hearing to consider new evidence from the parties, as was her prerogative.  See, e.g., Maull, 773 F.2d at 1486 ("[T]he district court had the authority under § 3142 to call for and conduct the detention hearing . . . ."); Order of Dec. 23, 2002, at 5–6.  The results of her hearing and the previously submitted evidence support Judge Armijo's conclusion that the government established that no condition or combination of conditions of release would reasonably assure the appearance of Cisneros as required and the safety of any other person and the community.[2]

_____

[2]We do not apply the presumption in 18 U.S.C. § 3142(e) that Cisneros should be detained "if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.) . . . ."  The presumption applies only if Cisneros committed a drug offense for which a maximum sentence of ten years or more is

(continued...)

- 15 -

With respect to the first factor that she was required to consider, id. § 3142(g)(1), Judge Armijo found that "the nature and circumstances of the offenses with which Defendant Lorena Cisneros is charged are very serious." Order of Dec. 23, 2002, at 6. We agree that some of the charges Cisneros faces—RICO conspiracy under 18 U.S.C. § 1962(d) involving predicate acts of murder, conspiracy to murder, and the manufacture and possession with intent to distribute narcotic drugs and other controlled substances—are very serious. Indeed, the predicate acts of the RICO conspiracy include the conspiracy to murder witnesses against the Cisneros organization. This factor certainly weighs in favor of detaining Cisneros pending trial.

With regard to the second factor, the weight of the evidence against the person, the district court concluded that "the weight of the evidence offered in support of those charges [against Cisneros] is significant." Order of Dec. 23, 2002, at 6. We agree. At this stage of the criminal proceedings, of course, the government need not offer all of its evidence. However, the evidence in the

---

[2](...continued)
authorized. One of the predicate acts for the conspiracy charged in the indictment was the manufacture of controlled substances in violation of 21 U.S.C. § 841(a). Section 841(b) of Title 21 sets the penalties for violations of § 841(a) based upon the amount of drugs involved. Findings relating to such amounts were not made by the district court, and we therefore have no basis for applying the presumption.

- 16 -

record is sufficient to persuade us that it is strong as to the charges against Cisneros.

With regard to the third factor, the history and characteristics of the defendant, the district court noted that Cisneros lives in the United States and has children here that she is responsible for. The court also noted that Cisneros had complied with the terms of conditional release that had been imposed upon her by the Arizona magistrate.

But, the district court also observed that at the time that Cisneros was complying with the Arizona terms of conditional release, she reasonably believed she was facing only three to four years in jail, whereas now she knows that she is facing the prospect of life imprisonment. Further, the district court noted that Cisneros now realizes that the government has stronger evidence against her than might have been apparent to her while she was on release under the Arizona order. Additionally, the district court noted that Cisneros has close family in Mexico, including one brother who was deported to Juarez following a felony conviction and another brother in the Juarez, Mexico, area who is currently a fugitive from justice, and that in the past Cisneros has traveled to Juarez with a sister and other family members. The court also noted that at least one of the other indicted defendants in this close-knit conspiracy is currently a fugitive from justice.

Although this factor has evidence going both ways, it does tend to support a conclusion that Cisneros is a flight risk because of her present knowledge of the seriousness of the charges against her and the resources available to her to abscond to Mexico should she choose to do so.

With regard to the fourth factor, we again agree with the district court's conclusion that Cisneros's release would pose a serious danger to other persons or the community. The charges against the members of this alleged RICO organization, including Cisneros, include serious acts of violence and the murder of prospective witnesses. The evidence suggests that Cisneros was deeply involved in the activities of the organization and inferentially likely knew of these acts of violence and murder. In the eyes of the law, there are very few charges more serious than a charge of murdering prospective witnesses because that conduct undermines the very fabric of our rule of law. We are satisfied that the government has shown by clear and convincing evidence that Cisneros presents "an identified and articulable threat" to an individual or the community. United States v. Salerno, 481 U.S. 739, 751 (1987). Although the government obviously cannot prove that Cisneros would in fact injure another individual or the community if she were released pending trial, it has presented clear and convincing evidence that she is an identified and articulable threat based upon the

prior conduct of the Cisneros Organization and her involvement with that organization.

## III.

For the foregoing reasons, we AFFIRM.