**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 1, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellant,

v.

DASHAWN ROBERTSON,

    Defendant - Appellee.

No. 21-2006
(D.C. No. 1:17-CR-02949-MV-1)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **PHILLIPS**, and **EID**, Circuit Judges.
_____

The government appeals from the district court's order releasing

Dashawn Robertson pending trial.  Exercising jurisdiction pursuant to 28 U.S.C.

§ 1291 and 18 U.S.C. § 3145(c), we reverse.

I. <u>Background</u>

A federal grand jury indicted Mr. Robertson for obstruction of justice by

retaliating against a witness in violation of 18 U.S.C. § 1513(a)(1)(B), and using,

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

carrying, and discharging a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c).[1] These charges arose out Mr. Robertson's alleged shooting of Desmick Sharber because Mr. Robertson believed that Mr. Sharber had cooperated with federal law enforcement in another criminal case.

At his initial detention hearing in December 2017, Mr. Robertson argued that he was not a flight risk or a danger to the community. He suggested that the court release him to La Pasada Halfway House because he had a "couple of prior failures to appear" and his release to La Pasada "would make sure that he does show up for everything." Aplt. App., Vol. 1 at 39. The government requested that Mr. Robertson be detained pending trial. It asserted that Mr. Robertson was a flight risk, citing six failures to appear as well as six warrants issued while he was on supervision. And it also argued that, given the nature of the indictment, Mr. Robertson was a danger to the community. The magistrate judge ordered Mr. Robertson detained pending trial, noting his extensive criminal history including charges for aggravated battery, possession of a firearm, receiving stolen property (a firearm), and drug trafficking. The magistrate judge found that no restrictions short of detention would ensure community safety.

From January 2018 through January 2020, Mr. Robertson moved nine times to continue his trial. The district court granted all the continuances and set the trial for March 23, 2020. Less than a week before trial, the court had to vacate that trial

---

[1] A superseding indictment added a charge for being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924.

setting due to the Covid-19 pandemic. The case was ultimately reset for December 7, 2020.

In July 2020, Mr. Robertson filed a motion under 18 U.S.C. § 3145(b), seeking review of the magistrate judge's detention order and asking for his immediate release on conditions of supervision. He argued that he was at a heightened risk of severe illness if he contracted Covid-19 because he suffers from a compromised immune system due to the removal of his spleen a few years ago. He also cited to the temporary release provision in § 3142(i) and argued that due to the changed circumstances caused by the pandemic, he should be released to his father or any other third-party custodian that Pretrial Services would approve.

The district court held a hearing on the motion in September 2020. A probation officer testified that she would still recommend detention based on flight risk and danger to the community. She noted the violent nature of the case, Mr. Robertson's history of violence, his history of failing to appear, his history of violating his probation by committing multiple new offenses, and his drug use. She further noted that he is facing a lengthy term of imprisonment.

At the hearing, the district court told the defendant:

> Mr. Robertson, you have not been responsible to the obligations of the Courts in the past. You haven't been responsible to your obligations with your probation officer in the past. And I'm afraid that the normal conditions which I can impose are not conditions that you have respected in the past. And, therefore, I don't believe that I have any at my disposal that I can utilize to release you.

Aplt. App., Vol. III at 250.  The court therefore denied release, stating, "Mr. Robertson, you pose a great risk of flight and of danger to the community." *Id.* at 251.

In December 2020, Mr. Robertson filed a motion to reconsider.  He noted that he had been in custody for over thirty-eight months and "remain[ed] vulnerable to the risk of more severe illness if he contracts COVID-19 due to his compromised immunity." *Id.*, Vol. I at 88.  He also proposed a new third-party custodian, his children's grandmother.

In response, Pretrial Services filed a report, noting Mr. Robertson's lengthy criminal history and history of violence, including the instant offense which involved shooting the victim multiple times; his history of failing to appear in court; his history of violating his probation by committing multiple new offenses; and his drug use.  At the conclusion of the report, the probation officer determined that the proposed third-party custodian was not suitable and stated her belief that there were no condition or combination of conditions that would reasonably assure the safety of the community and Mr. Robertson's appearance.

The government also responded, stating that it opposed reconsideration.  It explained that there had been no change in the law since the district court's September 2020 decision and that the only change in circumstances was the proposal for a different third-party custodian, whom Pretrial Services determined was not suitable.  For those reasons and the additional reasons outlined in the Pretrial Services report, the government opposed Mr. Robertson's release and asked the court to deny the motion for reconsideration.

4

In his reply, Mr. Robertson reiterated the arguments in his motion and also offered the possibility of being released to La Pasada.

The district court held a hearing on the motion on February 4, 2021. At that hearing, counsel for Mr. Robertson asserted that there were conditions of release that could assure Mr. Robertson's appearance and the safety of the community. Counsel also asserted for the first time that she was "asking for temporary release specifically to help us in preparation of this trial." Aplt. App., Vol. III at 301. Counsel explained that she could visit with Mr. Robertson by video, but she contended that "there's simply no substitute for in-person preparation."[2] *Id.*

The government argued that the district court had correctly assessed the danger to the community and the risk of non-appearance in the previous appeal of the magistrate judge's detention order. As for defense counsel's new assertion about release being necessary for trial preparation, counsel for the government suggested that there could be alternatives to release to enable Mr. Robertson to meet with his attorneys in person but explained that "this is kind of the first this trial preparation concern has been brought to my attention." *Id.* at 315.

The district court ultimately decided that it could "protect the public and safeguard Mr. Robertson's rights by releasing him to La Pasada under very strict conditions." *Id.* at 319.

---

[2] Counsel also noted that she and her co-counsel were relatively new to the case (she was appointed in September 2020 and her co-counsel was appointed in January 2021).

The next morning, the government filed an emergency motion for reconsideration and stay of the release order. The motion proposed two options for Mr. Robertson to be able to meet with his attorneys in person to prepare for trial without having to release him from custody. The district court entered a brief order granting Mr. Robertson's motion, denying the government's motion, and directing that Mr. Robertson be released from custody. Mr. Robertson was released from custody that same day.

The district court subsequently entered a Memorandum Opinion and Order with its written reasons for pretrial release. It first determined that Mr. Robertson had rebutted the presumption of detention in § 3142(e)(3)(B). Next, it considered the § 3142(g) factors. Although it acknowledged that some of the factors weighed against Mr. Robertson's release, it ultimately found that there were conditions or a combination of conditions that would reasonably assure his appearance and the safety of the community. The district court concluded that "[Mr. Robertson's] release is therefore required by § 3142(e)."[3] Aplt. App., Vol. III at 361. The court "additionally [found] that Mr. Robertson's release [was] necessary for the preparation of his trial defense under 18 U.S.C. § 3142(i)." *Id.* The court granted the motion to reconsider and ordered Mr. Robertson released pretrial on conditions.

---

[3] The district court stated that Mr. Robertson's release was required by § 3142(e), but the correct subsection for releasing Mr. Robertson on conditions is § 3142(c).

The government filed an appeal of the release order and an emergency motion in this court to stay the order pending appeal. This court granted the stay motion and Mr. Robertson was returned to custody.

II. Legal Framework

The Bail Reform Act sets out the framework for evaluating whether pretrial detention is appropriate. *See* 18 U.S.C. § 3142. As relevant here, a defendant may be released pending trial on a "condition or combination of conditions under subsection (c) of this section," *id.* § 3142(a)(2), or "detained under subsection (e) of this section," *id.* § 3142(a)(4). A defendant may be detained pending trial only if a "judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id.* § 3142(e)(1). In certain types of cases, a rebuttable presumption of detention arises that no release conditions will reasonably assure the defendant's appearance and the safety of the community. *Id.* § 3142(e)(3).

The judicial officer holds a detention hearing to determine whether the defendant can be released on conditions or whether the defendant must be detained. *Id.* § 3142(f). The factors relevant to considering whether there are release conditions that can ensure the defendant's appearance and the safety of the community are: "(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . ; (2) the weight of the evidence against the person; (3) the history and characteristics of the person . . . ; and (4) the nature

7

and seriousness of the danger to any person or the community that would be posed by the person's release." *Id.* § 3142(g).

If the judicial officer determines that the defendant should be released on conditions, it enters a release order. *Id.* § 3142(h). If the judicial officer determines that the defendant must be detained, it enters a detention order. *Id.* § 3142(i). When a defendant is subject to a detention order, the judicial officer may issue a "subsequent order" temporarily releasing an individual in custody "to the extent that the judicial officer determines such release to be necessary for the preparation of the person's defense or for another compelling reason." *Id.*

III. Discussion

We review the district court's ultimate release decision de novo because it presents mixed questions of law and fact; however, we review the underlying findings of historical fact for clear error. *United States v. Cisneros*, 328 F.3d 610, 613 (10th Cir. 2003).

A. *Statutory Bases for the District Court's Release Order*

We first address a threshold issue. The district court gave two separate statutory bases to support its release decision. It determined that Mr. Robertson should be released because there were conditions or a combination of conditions that would reasonably assure his appearance and the safety of any other person and the community, *see* § 3142(c). It then "additionally" found that Mr. Robertson's release was necessary under the temporary release provision in § 3142(i). Aplt. App., Vol. III at 316.

8

But once the district court determined that Mr. Robertson could be released on conditions, he was no longer subject to a detention order and the temporary release provision became inapplicable because it presupposes the existence of a detention order. The temporary release language is contained in § 3142(i), which is entitled "Contents of the detention order," so it presumes that a defendant must otherwise be detained pending trial but permits a "subsequent order" for temporary release for the limited reasons enumerated in that subsection. The two statutory grounds the district court relied on for release are therefore mutually exclusive—either a court can order a defendant released pretrial on conditions under § 3142(c) or a court can order detention and then subsequently order a temporary release under § 3142(i), but a court cannot release a defendant under both these grounds. Given these circumstances, we decline to review the district court's ruling that release was necessary under § 3142(i),[4] which was given as an "additional[]" basis for release, *see* Aplt. App., Vol. III at 361, not as an alternative basis.

---

[4] We also note that it is an open question whether a district court has authority to consider a request for temporary release under § 3142(i) when, as the case was here, a magistrate judge entered the initial detention order. At least one district court in our circuit has concluded "that, where a Magistrate Judge issues a defendant's pretrial detention order, the [district court] lacks the authority to subsequently order temporary release under § 3142(i)." *United States v. Alderete*, 336 F.R.D. 240, 267-68 (D.N.M. 2020); *see also id.* at 269 (concluding that "§ 3142(i)'s textual similarity to § 3142(f), and the Tenth Circuit's reasoning in *United States v. Cisneros*, supports the conclusion that only the judicial officer who originally issued a defendant's pretrial detention order may subsequently order temporary release"). Because the resolution of this issue is not necessary for the disposition of this appeal, we decline to address it at this time.

B.  *Reconsideration of the Detention Decision*

The magistrate judge concluded the government met its burden for pretrial detention at the initial detention hearing in December 2017 and the district court agreed with that conclusion on de novo review in September 2020.  The district court determined that Mr. Robertson posed a great risk of flight and danger to the community and that no condition or combination of conditions could assure his appearance or the safety of the community.  The district court changed course in its February 2021 decision when it reconsidered its September 2020 order and granted Mr. Robertson's release on conditions.

The government asserts that the December 2017 and September 2020 detention orders were correct and that the district court incorrectly decided on reconsideration that Mr. Robertson should be released because "no circumstances have changed to support the district court's about-face."  Aplt. Bail Mem. Br. at 18.  We agree with the government.  The district court has not identified new or changed circumstances relevant to the § 3142(g) factors that justified reconsidering its detention decision.

The district court identified the appropriate grounds for reconsideration as follows:  "'(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice.'"  Aplt. App., Vol. III at 355 (quoting *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)).  The court then noted that "[h]ere, several pieces of previously unavailable evidence justify the request for reconsideration."  *Id.* The court explained that when it denied release in September 2020:  (1) it was under

10

the belief that Mr. Robertson would only remain in pretrial detention for another three months—until the December 2020 trial date—and did not expect that the pandemic would cause the trial date to be rescheduled until April 5, 2021; (2) it was "under the impression" that Mr. Robertson would be able to prepare in-person with his attorneys in conference rooms at the Albuquerque courthouse, which turned out to be mistaken; and (3) it was not presented with the option of releasing Mr. Robertson to La Pasada Halfway House. *Id.* at 355-56 (citation omitted).

We conclude these are not appropriate grounds for the district court to reconsider its decision to detain Mr. Robertson pretrial, which was based on its finding in September 2020 that he "pose[d] a great risk of flight and of danger to the community." *Id.* at 250-51. First, the length of pretrial detention and the ability to meet with counsel in person are not statutory factors to consider when determining whether there are conditions of release that can assure the defendant's appearance and the safety of the community. *See* § 3142(g). Second, the district court's ability to release Mr. Robertson to La Pasada existed at the time of its September 2020 detention decision. In fact, Mr. Robertson asked to be released to La Pasada at his initial detention hearing in December 2017, *see* Aplt. App., Vol. I at 39, but the magistrate judge rejected that request when it denied Mr. Robertson's request to be released on conditions and ordered him detained, *see id.* at 40. Mr. Robertson could have presented La Pasada as an option to the district court when he initially sought review of the magistrate judge's detention decision, but he did not do so. His failure to present an option that was available at the time the district court made its

11

September 2020 detention decision does not support reconsideration of that decision. Rather, reconsideration is only appropriate when the allegedly new evidence was previously unavailable; it is not appropriate when the supporting facts were available at the time of the original motion. *See Servants of the Paraclete*, 204 F.3d at 1012.

But even if the district court's grounds for reconsideration were appropriate, reviewing the district court's release decision de novo, we disagree with the court's conclusion "that although some of these factors weigh against Mr. Robertson's release, they do not foreclose relief under the strict conditions the Court has imposed." Aplt. App., Vol. III at 358. Instead, consistent with the district court's September 2020 detention decision, we conclude that the § 3142(g) factors weigh in favor of Mr. Robertson's pretrial detention.[5]

---

[5] We note that because of his § 924(c) charge Mr. Robertson is subject to a rebuttable presumption under § 3142(e)(3)(B) that no condition or combination of conditions can reasonably assure his appearance and the safety of the community. The district court determined that Mr. Robertson rebutted this presumption because "he voluntarily turned himself in on the instant offense"; he "produced evidence that he will not flee the jurisdiction due to his family's presence here"; and "his placement at La Pasada Halfway House is a condition of release that could reasonably assure his appearance and the safety of the community." Aplt. App., Vol. III at 357. None of these reasons are new, however, so it is not clear why the district court has now determined that these reasons support the conclusion that Mr. Robertson has rebutted the presumption.

For example, Mr. Robertson argued at his initial detention hearing that his voluntary surrender and placement at La Pasada supported his release on conditions, *see id.*, Vol. I at 37, 39, but the magistrate judge rejected his request for release on conditions, *see id.* at 40. Mr. Robertson also made the same voluntary-surrender argument in his motion for review of the magistrate judge's decision, *see id.* at 31, but the district court denied release, *see id.*, Vol. III at 250-51. As for the "evidence" about his family's presence in the jurisdiction, the district court cites to the motion to reconsider, which states, "Now, the length of time alone that Mr. Robertson has been

First, as the district court recognized, the nature and circumstances of the offenses charged are "extremely serious and involve Mr. Robertson allegedly shooting a victim, D.S., in retaliation for his cooperation with the government in an earlier criminal case." *Id.* The court emphasized that "it takes Mr. Robertson's charges extremely seriously because the ability of witnesses to come forward and safely provide information to the government, and to the Court, is at the core of our criminal justice system." *Id.* We agree with the district court that the nature and circumstances of the offense charged are extremely serious, involving a crime of violence against a person for their alleged cooperation with the government in another criminal matter.

Second, although the district court characterized the weight of the evidence as "mixed," the court acknowledged that the victim "positively identified Mr. Robertson as the person who shot him and at least one other witness, N.F., has testified that Mr. Robertson made incriminating statements in the weeks prior to the shooting." *Id.* But the court then seemed to discount the strength of the evidence because of the possibility that the victim's identification of Mr. Robertson could have been

---

in custody has created in him a strong desire to be home with his family with no plans to leave the jurisdiction for any reason," *id.*, Vol. I at 92. A statement in a brief is not evidence, *see Am. Stores Co. v. Comm'r*, 170 F.3d 1267, 1271 (10th Cir. 1999), but even if it is, nothing in the record shows this evidence is new. But the defendant's burden to produce some evidence to rebut the presumption is not heavy, *see United States v. Stricklin*, 932 F.2d 1352, 1355 (10th Cir. 1991), so although the district court's decision does not seem to be supported by new evidence, the court does cite to some previously available evidence to support its determination that the presumption was rebutted.

influenced by the suggestion of others.  The government, however, points to evidence in the record that the victim knew Mr. Robertson before the shooting and had an opportunity to see him before Mr. Robertson shot him at point-blank range.[6]  The evidence against Mr. Robertson is strong.

The next factor is Mr. Robertson's history and characteristics.  The court noted that Mr. Robertson's "history of violating past conditions of release is a source of concern," explaining there were several instances in which his probation was revoked for failing to comply with conditions of release.  *Id.* at 359.  And the court also noted that he has several prior convictions.  But the court seemed to try to diminish the impact of Mr. Robertson's history of violating his conditions of release and his criminal history by noting that none of his probation violations involved him absconding and his convictions were not for violent offenses, although he did have convictions for illegal firearm possession.  We share the district court's concern over Mr. Robertson's history of violating his conditions of release.  As the court stated in its September 2020 decision in support of its finding that no conditions of release could ensure his appearance or the safety of the community:  "Mr. Robertson has not been responsible to his obligations to the courts or probation officers in the past" and "the normal conditions of release are not conditions he has respected in the past."  Aplt. App., Vol I. at 59 (clerk's minutes); *see id.*, Vol. III at 250 (hearing transcript).

---

[6] The district court denied Mr. Robertson's motion to suppress this identification evidence.

14

The fourth factor is the nature and seriousness of the danger to any person or the community. In considering this factor, the district court stated that it understood "the government's concerns given the frightening allegations in this case." *Id.*, Vol. III at 359. But it asserted that Mr. Robertson is presumed innocent, citing § 3142(j), and further asserted that "while he is someone who has been convicted of gun and drug offenses and has failed to comply with conditions of release in the past, he is not someone with a proven history of violent behavior." *Id.* The district court is correct that nothing in the Bail Reform Act modifies or limits the presumption of innocence, § 3142(j). But that does not mean, as the district court appears to suggest, that the charged conduct may not be considered in assessing Mr. Robertson's dangerousness to the community.

On de novo review of the § 3142(g) factors in our decision in *Cisneros*, we considered the charges against the defendant when assessing her danger to the community under this factor, observing that the charges "include serious acts of violence and the murder of prospective witnesses." 328 F.3d at 618.[7] We also considered the strength of the evidence, noting that it suggested the defendant "was deeply involved in the activities of the organization and inferentially likely knew of these acts of violence and murder." *Id.* at 618-19. We further explained that "[i]n

---

[7] In *Cisneros*, the defendant was named in a count of a multi-defendant indictment alleging a racketeering conspiracy, which had as a predicate act an alleged conspiracy to murder potential witnesses against a criminal enterprise known as the Cisneros Organization. 328 F.3d at 612.

the eyes of the law, there are very few charges more serious than a charge of murdering prospective witnesses because that conduct undermines the very fabric of our rule of law." *Id.* at 619. Although the victim here did not die, Mr. Robertson allegedly shot him eight times because of Mr. Robertson's belief that the victim had cooperated with federal law enforcement. Consistent with our decision in *Cisneros*, the seriousness and violent nature of this charge, as well as the strong evidence to support it, can be considered in assessing Mr. Robertson's danger to the community.

The district court also noted in its consideration of this factor that it was not "persuaded by the government's vague suggestions that Mr. Robertson might have tried to contact or intimidate witnesses in this case because it has provided no concrete or specific evidence to substantiate any such claims." Aplt. App., Vol. III at 359. We agree with the district court's statement to the extent that the government argued that Mr. Robertson was *continuing* to attempt to contact any witnesses in this case. But there is evidence in the record that Mr. Robertson did contact a witness in 2019.[8] *See* Aplt. App., Vol. II at 162-63 (transcript of witness interview). We also note that the district court seemed to remember this evidence when it stated at the February 4 hearing, "I thought [the witness] testified as to being contacted." *Id.*, Vol. III at 305. Evidence that Mr. Robertson contacted a witness after he was charged

---

[8] In briefing on the government's emergency stay motion, Mr. Robertson acknowledged the existence of this evidence, although he disputed that the contact had occurred, and argued that the government had failed to offer anything beyond the evidence of this one contact.

with this crime is relevant to assessing his dangerousness to the community and whether conditions of release can assure the safety of the community.

The district court also expressed concern about the potential for Mr. Robertson to contact witnesses, *id.* at 317, and acknowledged that it would be "easy" for him to use other residents' phones at La Pasada, but that the court was "forbidding [him] to borrow anyone's cellphone," *id.* at 320. The government argues that the conditions imposed do not adequately protect the public or the witnesses because of the minimal security at La Pasada and Mr. Robertson's access to telephones. We agree.

Based on our de novo review, all of the § 3142(g) factors weigh in favor of pretrial detention and there are no conditions that can assure Mr. Robertson's appearance and the safety of the community. In summary, this is a very serious and violent charge, the evidence against Mr. Robertson is strong, he has a history of violating conditions of release, and there is evidence that he contacted a witness.

IV. Conclusion

For the foregoing reasons, we reverse the district court's order granting Mr. Robertson's motion to reconsider and ordering him released on conditions. We grant the government's motion to seal two volumes of its appendix and Mr. Robertson's motion to seal his supplemental appendix. Finally, we note that, after this appeal was at issue, the parties filed four additional documents as well as an additional appendix volume. Nothing in Federal Rule of Appellate Procedure 9 or Tenth Circuit Rule 9 permits the parties to file these additional documents or the additional appendix volume and they all deal with matters that occurred after the

17

entry of the order on appeal.  We therefore did not consider the following in resolving this appeal:  "Notice of Filing" filed March 10, 2021; "Response to Appellant's Notice of Filing" filed March 11, 2021; "Notice of Change of Trial Date" filed March 30, 2021; "Response to Appellant's Notice" filed March 31, 2021; and "Defendant-Appellee's Appendix - Volume 2 (SEALED)" filed March 31, 2021.

Entered for the Court
Per Curiam