FILED
United States Court of Appeals
Tenth Circuit

January 27, 2025

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

BRYAN LUCERO,

    Defendant - Appellant.

No. 24-4093
(D.C. No. 2:23-CR-00061-DS-1)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, Chief Judge, **EBEL**, and **McHUGH**, Circuit Judges.
_____

Bryan Lucero is facing a criminal indictment based on allegations that he attempted to sexually assault a five-year-old child. Despite a psychologist's opinion that Mr. Lucero's "sexual risk can be manageable within the community," App. vol 2 at 189, the district judge ordered him to remain in custody until trial.[1] Mr. Lucero appeals. We affirm.

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] In this decision, we quote from and discuss record materials that have been filed under seal. We do so with caution given the sensitive nature of the materials,

## I.  Law Governing Pretrial Detention

The Bail Reform Act allows pretrial detention only if "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e)(1).

The detention decision must account for four factors:  (1) the nature and circumstances of the charged offense (including whether it involves a minor victim); (2) the weight of the evidence; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger release would pose to a person or the community.  *See* § 3142(g).

If probable cause exists to believe the defendant committed certain offenses (including, all agree, the offense charged against Mr. Lucero), courts must presume no combination of conditions will reasonably assure the defendant's appearance and the community's safety.  *See* § 3142(e)(3)(E).  When this presumption applies, the defendant has the burden to produce "some evidence" rebutting it.  *See United States v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir. 1991).  If the defendant produces such evidence, the statutory presumption still remains a factor relevant to the detention decision.  *Id.*

Even in cases triggering this rebuttable presumption, however, the burden of persuasion regarding the defendant's flight risk and danger to the community "always

---

and we have limited our discussion of the sealed materials to those parts necessary to provide a reasoned decision.  Volume 2 of the appendix will remain under seal.

remains with the government." *Id.* at 1354–55. The government "must prove dangerousness to any other person or to the community by clear and convincing evidence." *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003).[2]

## II. District Court Proceedings

Mr. Lucero was indicted on one count of attempting to coerce and entice a minor to engage in illegal sexual activity. *See* 18 U.S.C. § 2422(b).

The pretrial services report described the following allegations. Mr. Lucero contacted a man on social media whose profile claimed he was into something "taboo." App. vol. 2 at 130 (internal quotation marks omitted). Further communication revealed that the man's taboo interest was young children. The man claimed to have a five-year-old son whom he sexually abused. Mr. Lucero expressed his desire to sexually assault the boy in graphic language, and the two men arranged to meet that same day. It turned out that Mr. Lucero had been communicating with an undercover officer, and law enforcement arrested him when he arrived at the meeting spot. Mr. Lucero admitted he was the person who had been messaging the undercover officer, but he said that he knew it would have been wrong to assault the boy and that he probably would not have gone through with it.

The magistrate judge ordered Mr. Lucero's pretrial release with conditions. The government appealed to the district judge. After reviewing a psychosexual

---

[2] Flight risk is not an issue in this appeal.

3

evaluation of Mr. Lucero, the judge ordered his pretrial detention, concluding that no set of conditions could protect society if he were released.

Roughly sixteen months later, Mr. Lucero moved to reopen the detention hearing so the judge could consider a second psychosexual evaluation performed by the same psychologist who had performed the first one. In the months between the first and second evaluations, Mr. Lucero had been working with a mental-health professional from defense counsel's office "to develop better insight into what he did and why he did it." *Id.* at 152. In his second meeting with the psychologist, he disclosed more information about himself (including his own childhood trauma) and the alleged offense.

The second evaluation offered mixed results about Mr. Lucero's risk to the community. The psychologist noted that Mr. Lucero had "made significant gains in insight into how his prior trauma contributed to his offense behaviors." *Id.* at 184. Yet, the psychologist opined, "there is still much work to be done." *Id.* The second evaluation revealed evidence of "direct sexual arousal to children," and it concluded that Mr. Lucero's sexual risk was above average. *Id.* In some ways, the psychologist noted, it may appear that Mr. Lucero had "gotten worse" since the first evaluation. *Id.* at 186 (internal quotation marks omitted). But that development did not necessarily concern the psychologist because it is common in the beginning of treatment when people often open up about their problems.

The psychologist ultimately opined "that Mr. Lucero's sexual risk can be manageable within the community." *Id.* at 189. He thought Mr. Lucero would be

"very likely to comply with sexual risk reducing supervised release conditions." *Id.* at 188. And he recommended several conditions, including that Mr. Lucero have no unsupervised contact with minors, that he have no internet access without the approval of his supervising officer and therapist, and that he engage in sexual-offender-specific treatment. Mr. Lucero proposed similar conditions (along with location monitoring with a curfew or home detention) in his motion to reopen the detention hearing.

The government objected to Mr. Lucero's request for release. "Given how quickly defendant jumped on the opportunity to rape a 5-year-old with another man and acted on it," the government argued, "there are no conditions or combination of conditions that would ensure the safety of the community." *Id.* at 195. The conditions generally prohibiting unsupervised contact with minors and access to the internet were insufficient in the government's view because "they are easy to get around even with pretrial supervision." *Id.* at 196. The government thought GPS monitoring would also be inadequate because although it could show where Mr. Lucero had been, it could not show what he was doing or whom he was with.

The district judge concluded that no set of conditions could "reasonably assure the safety of the community." *Id.* vol. 1 at 124. He found that Mr. Lucero's "lack of criminal history is the only factor weighing in favor of pretrial release." *Id.* at 125. In the judge's view, some of Mr. Lucero's proposed conditions would be "more appropriate" as conditions of postconviction supervision. *Id.* at 124. He found that "GPS monitoring is insufficient to know what the Defendant is doing." *Id.* at 125.

And he found that the second evaluation's "conclusion that the risk is manageable if the Defendant has . . . no access to children and is offered sex offender treatment is unsupported by the reality of the risk attendant to releasing this Defendant into the community." *Id.* at 126. And so the judge ordered that Mr. Lucero remain in pretrial custody.

### III. Analysis

The parties set this appeal in different frames. Mr. Lucero proceeds as if we should treat the district judge's order as having decided whether pretrial release was appropriate. His framing assumes that, at least as a practical matter, the judge reopened the detention hearing and ruled against him on the merits. The government, by contrast, says we should treat the judge's decision as if it declined to reopen the detention hearing in the first place.

The proper framing matters because whether a defendant should be released and whether a detention hearing should be reopened are different issues involving distinct analyses. Whether a defendant should be released turns on whether conditions can reasonably assure his appearance and the community's safety. *See* § 3142(e)(1). But whether a detention hearing should be reopened turns on whether "information exists that was not known to the movant at the time of the hearing and that has a material bearing on the" detention decision. § 3142(f).

We think Mr. Lucero's approach better reflects the nature of the district judge's decision. Granted, the judge's order purported to deny a "Motion to Reopen Detention," mirroring the title of Mr. Lucero's motion. App. vol. 1 at 128. And the

6

parties did dispute whether the second psychosexual evaluation justified reopening the hearing. But the judge's analysis, taken as a whole, addresses whether the new evaluation justified Mr. Lucero's release, not whether it justified revisiting that issue.

We accept the district judge's findings of historical fact unless they are clearly erroneous. *See Cisneros*, 328 F.3d at 613. We review de novo the judge's application of the law to the facts, including the ultimate detention decision. *See id.*

### A. Did the district judge provide adequate analysis?

We reject Mr. Lucero's arguments that the district judge failed to account for facts favoring release and to consider whether a combination of conditions could reasonably assure community safety.

Despite asserting that the district judge failed to mention facts favoring release, Mr. Lucero concedes the judge recognized that his lack of criminal history weighed in favor of release. But because the judge did not say more about why his clean history supported release, Mr. Lucero appears to infer the judge must have erroneously reached "the (unstated) conclusion" that he lacked the ability to comply with release restrictions. Aplt. Mem. Br. at 26. That inference is too speculative for us to accept. The judge made no finding that Mr. Lucero lacked the ability to comply with release conditions, and we will not attempt to review findings never made.

Contrary to Mr. Lucero's suggestion, the district judge did not detain him "based solely on the nature of his offense." *Id.* (brackets and internal quotation marks omitted). The judge also relied on several findings in the second psychosexual evaluation—that Mr. Lucero "is likely to have pedophilic or deviant sexual arousal,"

7

App. vol. 1 at 125, that he lacks empathy, and that he has a "higher risk for reoffending," *id*. at 126. And the judge expressly considered the four factors in § 3142(g), not merely the nature and circumstances of the charged offense.[3]

We reject Mr. Lucero's argument that the district judge failed to explain adequately why the combination of his proposed release conditions could not reasonably assure public safety. This argument primarily flows from the premise that the judge addressed "only one of Mr. Lucero's proposed conditions." Aplt. Mem. Br. at 26. That premise is false. In addition to addressing GPS monitoring, the judge mentioned the proposed conditions requiring no contact with children and requiring sexual-offender treatment, disagreeing with the evaluation's conclusion that those conditions could make Mr. Lucero's risk to the community manageable. Taken in its entirety, the judge's ruling makes clear that he considered the proposed "set of conditions" and concluded they would not sufficiently mitigate the particular risk Mr. Lucero presents to community safety. App. vol. 1 at 124.[4]

**B. Did the district judge apply the correct standard?**

Mr. Lucero argues the district judge applied the wrong legal standard by refusing to release him unless community safety could be guaranteed rather than

---

[3] The government contends that courts need not consider all of the § 3142(g) factors after reopening a detention hearing. We need not take a position on that issue because the judge in this case did consider those factors.

[4] For that reason, we disagree with Mr. Lucero's assertion that *United States v. Mobley* "is directly on point." Aplt. Reply at 11. The district court in *Mobley* "did not consider whether any release conditions would assure" the defendant's appearance. 720 F. App'x 441, 445 (10th Cir. 2017).

merely reasonably assured.  The record refutes this claim.  The judge articulated the correct standard, and we see nothing in his ruling suggesting he applied some other standard.  Mr. Lucero is correct that the judge said "GPS monitoring is insufficient to know what the Defendant is doing.  It is not enough to know where he is." *Id.* at 125.  But that statement does not show that the judge would have released Mr. Lucero only on conditions that eliminated all possible risk; it merely reflects the judge's legitimate concern that location monitoring is a poor tool for preventing sexual assault because a person's location reveals little about whom he is with or what he is doing.

Mr. Lucero faults the district judge for opining that some of his proposed conditions are "more appropriate" for postconviction supervision. *Id.* at 124.  The judge did not explain this opinion, and we do not share it.  Perhaps the government is correct that the statement reflects the judge's agreement with its position that sexual-offender treatment would have little benefit now because it will be interrupted by the mandatory prison sentence that will follow a conviction.  That position is at least questionable.  After all, the government points to nothing in the record supporting the idea that the beginning phases of treatment cannot reduce risk or help patients manage their behavior to some degree.  In any event, the judge did not limit his statement to the proposed treatment condition.

In the end, though, the statement does not warrant reversal for two reasons.  First, whether the judge thought the proposed conditions were more appropriate for postconviction supervision is beside the point.  The judge based his ruling—

9

correctly—on his conclusion that the proposed conditions could not reasonably assure public safety. Second, our review of the detention decision is de novo, and, as we conclude in the next section, no combination of conditions could reasonably assure the community's safety if Mr. Lucero were released.

## C.  Did the district judge err in denying release?

Mr. Lucero contends the district judge overemphasized the seriousness of his charged conduct and ignored evidence that the risk he poses to the community could be reasonably managed. We disagree.

We reject his assertion that the district judge "relied exclusively on the seriousness of Mr. Lucero's alleged offense." Aplt. Mem. Br. at 33. The judge also relied on some of Mr. Lucero's psychological traits revealed in the second evaluation—a lack of empathy and likely pedophilia. Although the judge did conclude that "the nature of this crime" weighed against release, there was nothing wrong with that conclusion. App. vol. 1 at 125. The nature of the charged offense is a relevant factor. *See* § 3142(g)(1). And the nature of Mr. Lucero's charged offense says a lot about how much risk he poses to the community in the future. According to the allegations against him, he expressed a desire to sexually assault a child and quickly took steps to realize that desire. A person with such desires and a willingness to act on them presents an intolerable risk to public safety.

Mr. Lucero is correct that some evidence favored release. As he highlights, the second psychosexual evaluation opined that his risk could be managed in the

community. And the pretrial services report included a risk assessment placing him in the second-lowest risk category.

Still, Mr. Lucero's proposed conditions—though undeniably strict—would not reasonably assure public safety. Even with the proposed conditions, the safety of the community would depend on Mr. Lucero's voluntary compliance. That will be true, of course, in many cases. But what sets this case apart from others in which release may be appropriate is the severity of the harm that Mr. Lucero might inflict if released. The well-supported allegations show that he was eager to inflict extreme harm on a vulnerable child. It is not reasonable to expose the public to harm of that magnitude, even if there is a low chance, statistically speaking, that it will occur.

The § 3142(g) factors reinforce the point. The nature and circumstances of the charged offense strongly favor detention. The offense carries a presumption of detention, and Mr. Lucero's alleged conduct threatened severe harm to a child. The weight of the evidence against him favors detention, too. His history and characteristics cut both ways. On the one hand, he has no criminal history, he was attending college and working before his arrest, and the second evaluation concluded that he is very likely to comply with release conditions. On the other hand, however, the evaluation makes clear that he has psychological traits creating a risk to public safety. The nature and seriousness of the danger his release would pose to children also favor detention. On balance, these factors favor detention.

11

## IV.  Disposition

The district judge's order is affirmed.

Entered for the Court

Per Curiam