**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**October 7, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JOSE JUAN PORTILLO-CAMARGO,

    Defendant - Appellant.

No. 22-1244
(D.C. No. 1:22-CR-00178-REB-JMC-1)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, Chief Judge, **BRISCOE** and **ROSSMAN**, Circuit Judges.
_____

Jose Juan Portillo-Camargo was charged with conspiracy to distribute and possess with the intent to distribute methamphetamine and a mixture containing fentanyl in violation of 21 U.S.C. §§ 841 and 846. A magistrate judge ordered Mr. Portillo's conditional release pending trial. The government appealed and the district court stayed, then revoked, the release order. Mr. Portillo now challenges his

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

pretrial detention.  Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3145(c), we affirm the district court's order.

## I.  Background

In February 2022, Juan Partida-Sanchez was involved in a crash outside Pagosa Springs, Colorado.  Police responding to the scene found a cardboard box on the highway containing several kilograms of methamphetamine and multiple bags of fentanyl pills.  Pursuant to a search warrant, police searched Mr. Partida's truck and found more drugs.  In total, police found 31 kilograms of methamphetamine and almost 9 kilograms of fentanyl.

Several items recovered from the truck, including documents and a cell phone, eventually led law enforcement to Mr. Portillo.  In particular, the phone contained text messages between Mr. Partida and an individual identified in the texts as "JJ," whom law enforcement believed to be Mr. Portillo.  The texts discussed the logistics of an upcoming trip.  In one of those messages, JJ gave Mr. Partida the numbers for a credit card, and later investigation confirmed the card belonged to Mr. Portillo.

Police recovered a second cell phone from Mr. Partida after taking him into custody.  A search of that phone revealed that it belonged to a man named A.N.  It also contained numerous text messages from JJ, which appeared to relate to drug shipments.  When law enforcement officers spoke to A.N. in Phoenix, he admitted helping JJ with several interstate drug shipments.  A.N. identified Mr. Portillo as JJ in a 12-person photo array.

A.N. told the officers that he had been introduced to Mr. Portillo by a man named D.G. An interview with D.G. revealed that he had made separate drives to Denver and Chicago at Mr. Portillo's behest. D.G. also identified Mr. Portillo as JJ in a photo array.

Subsequent investigation revealed Mr. Portillo had flown between Phoenix and Denver 26 times between May 2021 and January 2022. And records from the U.S. Border Patrol showed that he had crossed the United States-Mexico border dozens of times, including 35 round trips to and from Mexico in the previous two years.

In June 2022, a Colorado grand jury indicted Mr. Portillo for conspiracy to distribute and possess with the intent to distribute more than 50 grams of methamphetamine and more than 400 grams of a mixture containing fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. If convicted under these statutes, Mr. Portillo faces a minimum of 10 years in prison. *Id.* § 841(b)(1)(A)(viii). Three weeks after the indictment, federal agents arrested Mr. Portillo in Arizona using a GPS ping warrant for the cell phone that had been used in the text exchanges with Mr. Partida.[1]

After his arrest, police discovered additional evidence that Mr. Portillo was involved in planning and directing interstate drug shipments. First, his phone

---

[1] A GPS ping warrant "orders a cellular telephone company to affirmatively create evidence about the whereabouts of a particular cellular telephone at the direction of law enforcement by sending a ping to the device and transmitting the [resulting] GPS coordinates . . . to officers." *United States v. Thorne*, 548 F. Supp. 3d 70, 116 (D.D.C. 2021) (internal quotation marks omitted).

contained numerous messages using coded language that officers believed were about transporting drugs. Second, the phone contained photographs of what appeared to be methamphetamine on drug scales and a screenshot of an article about a drug bust in which traffickers had hidden drugs in empty fire extinguishers.

Officers also found information on Mr. Portillo's phone that led them to a storage unit Mr. Portillo had rented in Aurora, Colorado. Inside they found disassembled fire extinguishers containing drug residue, packing materials containing drug residue, and a blue fentanyl pill similar to those found in Mr. Partida's truck.

Soon after Mr. Portillo's arrest, a federal magistrate judge in Phoenix held a detention hearing and heard the testimony of a DEA agent. The magistrate judge concluded that the government had shown Mr. Portillo is a flight risk and a danger to the community. Nevertheless, the magistrate judge found there were conditions—namely, restricting travel to Mexico—that would reasonably assure Mr. Portillo's appearance at further court proceedings and the safety of the community.

The government then filed an emergency motion in the District of Colorado, seeking a stay until the release order could be reviewed. The district court granted the motion and proceeded to conduct its own detention hearing under 18 U.S.C. § 3142(f). In a written order, the district court concluded that the government had established that there was no combination of conditions that would reasonably assure Mr. Portillo's court appearance and the safety of the community.

Mr. Portillo then filed this appeal.

## II.  Discussion

We review the district court's ultimate pretrial detention decision de novo because it presents mixed questions of law and fact.  *United States v. Cisneros*, 328 F.3d 610, 613 (10th Cir. 2003).  We review the underlying findings of fact, however, for clear error.  *Id.*  "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on review of the entire record, is left with the definite and firm conviction that a mistake has been committed."  *United States v. Gilgert*, 314 F.3d 506, 515 (10th Cir. 2002) (brackets and internal quotation marks omitted).  We review the district court's findings with significant deference, cognizant that "our role is not to re-weigh the evidence."  *Id.* at 515-16 (internal quotation marks omitted).

The Bail Reform Act establishes the framework for determining whether pretrial detention is appropriate.  *See* 18 U.S.C. § 3142.  The nature of the charges against Mr. Portillo establish a rebuttable presumption "that no condition or combination of conditions will reasonably assure [his appearance] . . . and the safety of the community."  *Id.* § 3142(e)(3)(A) (presumption applies to charged offenses "for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act").[2]  Mr. Portillo bears the burden of producing evidence to rebut the presumption.  *See United States v. Stricklin*, 932 F.2d 1353,

---

[2] The nature of the charges also means the government was entitled to a hearing on its motion for detention under § 3142(f)(1)(C).

1354 (10th Cir. 1991). But "[e]ven if a defendant's burden of production is met, the presumption remains a factor for consideration by the district court in determining whether to release or detain." *Id.* at 1355. At the same time, "the burden of persuasion regarding risk-of-flight and danger to the community always remains with the government." *Id.* at 1354-55. "The government must prove risk of flight by a preponderance of the evidence, and it must prove dangerousness . . . to the community by clear and convincing evidence." *Cisneros*, 328 F.3d at 616 (citations omitted).

The statute directs courts to consider each of the following four factors in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community: "(1) the nature and circumstances of the offense charged"; (2) the weight of the evidence; (3) the person's history and characteristics; and "(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). The district court considered each of these factors, and we find no fault with its conclusion that they weigh in favor of detention with regard to safety of the community.[3]

---

[3] Having affirmed the detention order in this § 3142(f)(1) case on the safety-of-the-community ground, we decline to address the district court's independent conclusion that the government proved by a preponderance of the evidence that no condition or combination of conditions will reasonably assure Mr. Portillo's court appearances.

**A.  The Nature and Circumstances of the Offense Charged**

The district court found that the charges against Mr. Portillo—conspiracy to distribute, and possess with intent to distribute, 50 grams and more of pure methamphetamine and 400 grams of fentanyl—weigh heavily in favor of detention. Mr. Portillo admits the charges are serious, but notes there is no evidence that he or Mr. Partida were armed, or that Mr. Portillo ever threatened Mr. Partida. Nevertheless, the district court noted that the drugs Mr. Portillo conspired to distribute "are extremely dangerous and often deadly." App. at 58. Indeed, the government's proffer indicated a large amount of drugs involved: 31 kilograms of methamphetamine and 8.8 kilograms of fentanyl pills. We discern no error in the district court's assessment of this factor.

**B.  The Weight of the Evidence**

The district court found the evidence against Mr. Portillo is substantial and weighs in favor of detention. The evidence included, among other things, that Mr. Portillo's phone contained a series of text messages using coded language about transporting drugs. The phone also contained photographs of what appeared to be methamphetamine on drug scales and a screenshot of an article about a drug bust in which traffickers had hidden drugs in empty fire extinguishers. Finally, the evidence included a proffer about a storage unit Mr. Portillo had rented that was discovered to contain disassembled fire extinguishers with drug residue and a blue fentanyl pill similar to the ones found at the scene of Mr. Partida's accident.

Mr. Portillo does not challenge this evidence, but he seems to suggest the district court should have weighed the evidence differently because (1) the two individuals who identified him as the organizer of the drug shipments at first denied being involved, and (2) there are innocent explanations for his travels. But we cannot reweigh the evidence on clear-error review. *Gilgert*, 314 F.3d at 515-16.

The first two factors, then, weigh decidedly against release.

## C. The Defendant's History and Characteristics

Section 3142(g) instructs the judicial officer to consider "the history and characteristics of the person," including:

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law[.]

§ 3142(g)(3)(A)-(B). The district court found this factor cuts both ways. On the one hand, Mr. Portillo has no criminal record and has strong community and family ties to Arizona where he has lived most of his life. Mr. Portillo also reported that he is self-employed in car sales and earns approximately $5,000 per month. On the other hand, the district court noted Mr. Portillo has significant ties to Mexico and has traveled there frequently in recent years.

Mr. Portillo argues that this factor weighs in favor of his release because while he has traveled extensively to Mexico to visit family, he has traveled *and returned from* Mexico even after his co-conspirator Mr. Partida was indicted. The government notes, however, that there is evidence Mr. Portillo continued to organize drug shipments long after Mr. Partida was arrested.

In short, we discern no error with the district court's assessment of this factor—which, at least insofar as dangerousness is concerned, did not clearly point in favor of either side's position.

### D. The Nature and Seriousness of the Danger to the Community

The district court found that Mr. Portillo presents an unreasonable risk to the safety of the community. It noted that the safety concern expressed in § 3142(e) is broader than merely the danger of physical harm from violence. Rather, it "'refers to the danger that the defendant might engage in criminal activity to the detriment of the community.'" App. at 58 (quoting S. Rep. No. 98-225, *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3195). The district court found that the government presented clear and convincing evidence that Mr. Portillo was involved in and managed a large-scale drug distribution operation, that he traveled frequently to facilitate that distribution, and that the amounts of methamphetamine and fentanyl were significant. Based on this evidence, the district court concluded that "the risk that [Mr. Portillo's criminal activity] may continue if [he] is released . . . present[s] an unreasonable risk to the safety of the community, which risk cannot be eliminated or effectively extenuated through bond conditions." *Id.*

9

Mr. Portillo argues the district court committed clear error in this regard. In particular, he notes (1) in the hearing before the magistrate judge, the testifying DEA agent named the witnesses against Mr. Portillo, strongly indicating that he poses no danger to anyone in this case, and (2) the government did not contest the release of Mr. Partida.

As to Mr. Portillo's first argument, we have already noted that the legislative history of § 3142(e) indicates it is concerned with more than just the threat of physical violence. Indeed, "the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the safety of any other person or the community." *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989) (internal quotation marks omitted). And, as indicated above, there is evidence in the record that Mr. Portillo continued to organize drug shipments even after Mr. Partida's arrest.

We also reject Mr. Portillo's second argument, which admittedly has more heft. But the argument depends on a comparison between Mr. Portillo and Mr. Partida. There is nothing in the record to indicate Mr. Partida's history and characteristics, so the comparison is incomplete at best. What we do know, however, is that the evidence indicates Mr. Portillo is an organizer who directed the activities of several other individuals. Mr. Partida, by comparison, was merely a courier. *Cf.* U.S. Sentencing Guidelines Manual § 3B1.1(c) (providing that offense level be increased if the defendant was "an organizer, leader, manager, or supervisor"). Clearly, the "detriment to the community" concern expressed in § 3142(e) is greater with respect to an organizer as opposed to a mere courier.

### III.  Conclusion

Based on our de novo review, we agree with the district court that the § 3142(g) factors weigh in favor of pretrial detention.  We affirm.


                                   Entered for the Court
                                   Per Curiam