FILED
United States Court of Appeals
Tenth Circuit

**October 21, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

TERRY LEGARETTA,

    Defendant - Appellant.

No. 25-3151
(D.C. No. 2:23-CR-20066-HLT-1)
(D. Kan.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **EID**, **KELLY**, and **FEDERICO**, Circuit Judges.
_____

In October 2023, the government indicted Terry Legaretta in the District of

Kansas on ten counts, including conspiracy to distribute and possession with intent to

distribute fentanyl, distribution of fentanyl, and money laundering. But authorities

were unable to locate him until June 2025 when he was arrested in Texas. He had his

initial appearance there, and a magistrate judge ordered him detained pending trial.

At his first appearance in Kansas, Mr. Legaretta moved for pretrial release. The

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

district court denied his motion and ordered his continued detention pending trial.  He now appeals the district court's detention decision.  Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3145(c), we affirm.

I.

The Bail Reform Act, 18 U.S.C. § 3142, sets out the framework for evaluating whether pretrial detention is appropriate.  In general, persons charged with a crime are not detained pretrial.  *See* § 3142(b).  But for some charges, including the drug-trafficking charges against Mr. Legaretta, there is a rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community."  § 3142(e)(3)(A).  "Once the presumption is invoked, the burden of production shifts to the defendant." *United States v. Stricklin*, 932 F.2d 1353, 1354 (10th Cir. 1991).  Even if a defendant rebuts the presumption, it remains a factor for consideration in the detention decision. *Id.* at 1355.  If the presumption is rebutted, the government bears the burden of proving risk of flight by a preponderance of the evidence and dangerousness to any other person or the community by clear and convincing evidence.  *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003).

"'[I]n determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community,' the judicial officer must consider" the four factors in § 3142(g). *Id.* at 617 (quoting § 3142(g)).  Those factors are:  "(1) [t]he nature and circumstances of the offense charged . . . ; (2) the weight of the evidence against the

2

person; (3) the history and characteristics of the person . . . ; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *Id.* (quoting § 3142(g)).

The district court determined that Mr. Legaretta had presented sufficient evidence to rebut the statutory presumption of detention, but noted the presumption remains a factor to be considered with the other § 3142(g) factors in deciding whether pretrial detention is appropriate. The court first considered the nature and circumstances of the crime, noting the charges stemmed from three controlled buys of fentanyl between Mr. Legaretta and a confidential source, and detailing the amount of drugs recovered through search warrants at several locations. The court also emphasized that "[f]entanyl is a dangerous narcotic," explaining "[i]t is 50 times stronger than heroin" and "is a major contributor to fatal and non-fatal overdoses in the United States." Aplt. App., vol. I at 65.

Next, the court considered the weight of the evidence, reiterating that the three controlled buys occurred between Mr. Legaretta and a confidential source, and the subsequent searches recovered a substantial amount of fentanyl. It concluded "the government seems to have strong evidence." *Id.*

As for his history and characteristics, the court noted that Mr. Legaretta was born and raised in the Kansas City area and his parents, siblings, and daughter live in the area. But the court observed that his living situation over the past few years was "difficult to piece together." *Id.* at 66. Mr. Legaretta reported to pretrial services that he had resided with his parents for two years and traveled to Mexico and

3

Colombia in 2025. But the court determined that "[t]his living situation and travel history is not consistent with the record." *Id.* at 67.

For example, at the detention hearing, his attorney indicated that Mr. Legaretta had lived in Arizona for portions of that time. And the court explained that Mr. Legaretta's "medical records indicate that he repeatedly received treatment in Mexico from May 2024 through around May 2025 for various health issues," and they show multiple visits to the emergency department since early January 2024. *Id.* The court also noted there was "evidence that he was in Mexico in 2023, which was not reported in his timeline," and "[n]either was the medical treatment in 2024." *Id.* at 67-68.

The district court explained that after officers obtained a search warrant and searched a stash house and Mr. Legaretta's residence in February 2023, law enforcement did not see him again in Kansas City. Mr. Legaretta was indicted in October 2023, and his co-defendant was arrested in December 2023. But he was not apprehended until June 2025 after he flew from Colombia to Mexico to Texas. The court "inferred that Mr. Legaretta learned of the search and the investigation and the subsequent indictment and fled." *Id.* at 67. The court also observed that Mr. Legaretta had "struggled with supervision in the past," *id.* at 70, explaining that he had "diversion revoked, violated probation, and has had some warrants issued for failing to appear," *id.* at 68. The court concluded the government had "easily established by a preponderance of the evidence that no condition or combination [of conditions] will assure his appearance." *Id.* at 70.

4

The court also discussed the serious nature of the charges involving distribution of fentanyl, and Mr. Legaretta's access to firearms. It reiterated that "[f]entanyl is potent and lethal." *Id.* at 69. The court also noted that Mr. Legaretta had access to large amounts of cash, as evidenced by his purchase of six different automobiles—all paid for in cash—with a total purchase price exceeding $630,000. But it explained that Mr. Legaretta reported he was currently unemployed and was financially dependent on his parents. Contrasting "the quantity of drugs and guns seized and the access to cash [from] drug trafficking" with Mr. Legaretta's "current financial situation," the court found "it is likely that he will resume trafficking and that there is no combination of conditions that will ensure the community's safety from his drug trafficking." *Id.* at 69.

The court considered conditions of release, including curfew, home detention, location monitoring, and appointing a custodian. But the court concluded the government had proven that no conditions would reasonably assure Mr. Legaretta's appearance or community safety, so it ordered his continued pretrial detention. He now appeals that detention decision.

## II.

"We apply de novo review to mixed questions of law and fact concerning the detention or release decision, but we accept the district court's findings of historical

5

fact which support that decision unless they are clearly erroneous." *United States v. Cisneros*, 328 F.3d 610, 613 (10th Cir. 2003).

*Weight of the Presumption*

Mr. Legaretta first argues that the district court "gave the presumption excessive weight in reaching its ultimate detention decision." Aplt. Bail Mem. Br. at 11. He contends the district court's "reasoning demonstrates this error" because "[a]fter acknowledging that the presumption was rebutted, the court immediately pivoted to emphasizing the serious nature of the charges and the substantial penalties [he] faces—the very factors that gave rise to the presumption in the first place." *Id.*

We see no error. The statute directs the court to consider, for the first factor, "the available information concerning . . . the nature and circumstances of the offense charged, including whether the offense . . . involves a . . . controlled substance." § 3142(g)(1). So, the court was simply following the statutory scheme by discussing the nature and circumstances of Mr. Legaretta's offense after it decided the presumption had been rebutted.

*Flight Risk*

Mr. Legaretta next argues that the district court's flight-risk finding "was clearly erroneous given the overwhelming evidence of his ties to the community and his demonstrated willingness to comply with judicial supervision." Aplt. Bail Mem. Br. at 12. We see no clear error in the district court's flight-risk determination.

Mr. Legaretta contends that "[t]he evidence established that [he] has extraordinarily strong ties to Kansas City." *Id.* The court did recognize the evidence

6

of his community and family ties to Kansas City, relying on that evidence to conclude he rebutted the presumption of detention. It explained, however, that "[f]or both prongs, the defendant highlights his family ties, but those ties were present during the alleged offense conduct and those ties were not sufficiently strong to keep him law-abiding or to hold him here after learning of the investigation." Aplt. App., vol. I at 70. Mr. Legaretta argues that "[t]his reasoning conflates flight risk with the separate question of future dangerousness." Aplt. Bail Mem. Br. at 13. But the district court clearly stated it was addressing the family ties as to "both prongs," meaning both flight risk and danger to the community, and specifically addressed flight risk by explaining that the family ties were not sufficiently strong to "hold him here after learning of the investigation." Aplt. App., vol. I at 70. So, the court did address how the family ties were insufficient to support a finding that Mr. Legaretta was not a flight risk. And the court also noted that Mr. Legaretta "has struggled with supervision in the past," explaining he had diversion revoked, he had violated probation, and he had warrants for non-appearance. *Id.*

Mr. Legaretta next asserts his medical treatment in Mexico does not establish flight risk, and that it is "a common practice among residents of border states" to seek "more affordable treatment across the border." Aplt. Bail Mem. Br. at 14. But the court focused on his medical treatment in Mexico to show that the description of his living situation and travel history he presented to pretrial services was not consistent with the record. He had reported to pretrial services that he had resided with his parents for the past two years and that he traveled to Mexico and Colombia

7

in 2025. Then, his attorney indicated at the hearing that Mr. Legaretta had actually lived in Arizona for portions of that time. But the medical records showed he had received treatment in Mexico from May 2024 through May 2025, and he did not report any travel to Mexico in 2024. So, the court relied on this medical-records evidence to show that Mr. Legaretta had an established presence in Mexico over the preceding year, and he had the ability to travel internationally in ways that law enforcement was not able to detect, noting it took over two years to apprehend him.

Mr. Legaretta also argues that the court failed to consider his cooperation and willingness to surrender. He contends that "[t]he record shows that [his] attorney contacted law enforcement twice to inquire about potential charges and to arrange surrender if charges were filed." Aplt. Mem. Br. at 13. But that is not what the record shows. The record reflects that during the detention hearing defense counsel stated that Mr. Legaretta's prior attorney contacted law enforcement, but he did not know the dates of the contact or what occurred during those conversations. There was no evidence presented in the form of an affidavit or declaration showing the dates the prior attorney contacted the government or what transpired during those contacts.

The court noted that Mr. Legaretta's attorney contacted law enforcement but stated it was not clear when those contacts occurred. Mr. Legaretta was ultimately detained in Mexico after flying there from Colombia and, at that point, he agreed to voluntarily surrender. The district court acknowledged Mr. Legaretta's decision to voluntarily surrender after he was detained in Mexico. But given that it took two

8

years for law enforcement to locate him, the fact that he voluntarily surrendered once he came to the attention of Mexican authorities does not outweigh the other evidence of his ability to travel internationally without detection and the inconsistencies in his reporting on his residential and travel history.

Mr. Legaretta has failed to show the district court committed clear error in determining he was a flight risk. The court's determination is supported by the record evidence.

*Danger to the Community*

Mr. Legaretta asserts that the district court's finding on danger to the community is clearly erroneous because "it is based on speculation about future conduct rather than evidence of present dangerousness." Aplt. Bail Mem. Br. at 15. And he contends that "[d]rug distribution alone, without more, does not establish the type of concrete dangerousness required for pretrial detention under [*United States v. Salerno*, 481 U.S. 739 (1987)]." *Id.* at 16. We disagree.

We first reject the argument that drug distribution alone does not establish dangerousness under *Salerno.* Mr. Legaretta does not include a specific citation to where this issue was addressed in *Salerno*, and we could not find any discussion of it in our reading of that case.[1] In any event, we have explained that "[s]afety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community" and "the risk that a defendant will continue to

---

[1] In *Salerno*, the Supreme Court upheld the validity of the Bail Reform Act against an argument that the Act was facially unconstitutional. *See* 481 U.S. at 741.

engage in drug trafficking constitutes a danger to the safety of any other person or the community." *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989) (internal quotation marks omitted).

The court also properly considered the nature and circumstances of the charged crime, the weight of the evidence, and Mr. Legaretta's history and characteristics in determining that he was likely to engage in drug trafficking again. It did not engage in speculation, but instead concluded that Mr. Legaretta represented a danger to the community after considering the § 3142(g) factors. We see no clear error in the district court's finding on this issue.

*Release Conditions*

Finally, Mr. Legaretta argues the district court failed to adequately consider his proposed conditions of release. Again, we disagree. The court considered his proposed conditions of release, including curfew, home detention, location monitoring, and appointing a custodian. But it explained it had "no confidence that these conditions alone or together and even with some financial collateral or stake would reasonably assure his appearance or the safety of the community," because of Mr. Legaretta's "access to means and the ability to get out of this country in ways that law enforcement was not able to earlier detect, and after an established presence in Mexico over the course of the [preceding] year." Aplt. App., vol. I at 71. The court noted that Mr. Legaretta was "able to travel internationally in ways unknown to law enforcement," and it took two years to apprehend him. *Id.* And it reiterated that Mr. Legaretta had struggled with supervision in the past. The court analyzed the

10

proposed conditions in light of Mr. Legaretta's specific circumstances and adequately explained its conclusion as to why the conditions were insufficient. Mr. Legaretta has not shown the district court committed reversible error.

III.

We affirm the district court's detention decision.

Entered for the Court

Per Curiam