FILED
United States Court of Appeals
Tenth Circuit

December 12, 2025

Christopher M. Wolpert
Clerk of Court

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

XZAVIER BRANDNELIUS SAMILTON,

    Defendant - Appellant.

No. 25-6173
(D.C. No. 5:25-MJ-00613-CMS-1)
(W.D. Okla.)

_____

## ORDER AND JUDGMENT[*]

_____

Before **HOLMES**, Chief Judge, **MATHESON**, and **CARSON**, Circuit Judges.

_____

Xzavier Brandnelius Samilton appeals the district court's pretrial detention order. Exercising jurisdiction under 18 U.S.C. § 3145(c) and 28 U.S.C. § 1291, we affirm.

## BACKGROUND

Samilton was arrested and charged with being a prohibited person (drug user) in possession of a firearm, in violation of 18 U.S.C. § 922(g)(3). The probation

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

office filed a pretrial services report recommending that he be detained pending trial. A magistrate judge held a detention hearing and ordered that Samilton be released under conditions, including home confinement and GPS location monitoring. The government appealed. The district court reviewed the release issue de novo, considered the audio recording of the detention hearing, reversed the magistrate judge's order, and ordered that Samilton be detained pending trial. The district court found that the government had carried its burden of proving that Samilton's release posed a danger to the community and that no conditions could reasonably ensure the community's safety.

At the detention hearing, the government called Detective Autumn Sheets as a witness. She testified that Oklahoma City Police Department officers responded to a disturbance call on September 25, 2025. Multiple people had called reporting that they believed they were hearing gunshots or fireworks. Officers who responded to the scene stopped a vehicle in which Samilton was a front-seat passenger. There was a strong odor of marijuana coming from inside the vehicle.

Samilton admitted he had been shooting off fireworks and had smoked marijuana just prior to the traffic stop. When the officers searched his person, they found a pill bottle containing pills—which Samilton later admitted were Percocets he had purchased "off the street," Aplt. App., vol. I at 65—and a small amount of marijuana. The officers also searched the vehicle, where they found a firearm underneath the front passenger seat. Samilton admitted the firearm belonged to him.

2

During a later jail interview, Samilton admitted to smoking marijuana multiple times a day as well as using Percocet. He stated he spends all his money on marijuana.

Detective Sheets also described Samilton's close ties to a gang known as the Shotgun Crips. She explained that the gang has experienced an internal feud since 2004 (before Samilton was born) involving shootings and murders, in which Samilton's family has been implicated. Among other things, the feud appears to have led to a shooting at a parking garage in 2023 in which Samilton was allegedly involved. Samilton was initially arrested and charged for this shooting, along with another suspect, but the charges were later dismissed due to "witness issues." *Id.* at 75.

Detective Sheets testified that Samilton is also a person of interest for a homicide that occurred in October 2025. His phone records and other evidence showed that he was potentially the driver in the homicide. Detective Sheets stated Samilton has multiple prior or pending cases involving guns and characterized him as "a danger to the community," *id.* at 84, due to his possession of firearms and drug use as well as his criminal history.

The pretrial services report stated that Samilton works part time at Dollar Tree, is a daily marijuana user and used Percocet about once a month. He is in good health, is a lifelong resident of the Oklahoma City area, graduated from high school in 2023, and has an 11-month-old child that resides with the child's mother but whom Samilton sees every weekend. The report described his prior record, which included

several incidents involving firearms.  Notably, it included charges brought against him in 2025 for carrying or possessing firearms by an adjudicated delinquent after he allegedly returned fire on a subject who shot at him, and then Samilton picked up the spent shell casings.

## DISCUSSION

### A.  Legal Standards

Pre-trial release is governed by the Bail Reform Act, 18 U.S.C. § 3142.  The key factors are risk of flight and potential danger to the community or any other person.  *See id.* § 3142(e)(1).  Although the government cited both factors here, it relied primarily on danger to the community.  The district court based its order on that factor.

The government has the burden of proof at pre-trial detention hearings.  *See United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003).  As pertinent here, the government was required to prove by clear and convincing evidence that Samilton poses a continuing risk to the community, *see id.*, and "that no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community" if he were released.  § 3142(e)(1).  The Act directs district courts to consider the following factors in deciding whether the safety of the community can be assured if the defendant is released: (1) the nature and circumstances of the charged offense, including whether the offenses involve a minor victim; (2) the weight of the evidence; (3) the defendant's history and characteristics;

4

and (4) the nature and seriousness of the danger that would be posed by the defendant's release. *Id.* § 3142(g).

We review the district court's pretrial detention decision de novo because it presents mixed questions of law and fact. *See Cisneros*, 328 F.3d at 613. But we review the underlying findings of fact for clear error. *See id.* "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on review of the entire record, is left with the definite and firm conviction that a mistake has been committed." *United States v. Gilgert*, 314 F.3d 506, 515 (10th Cir. 2002) (brackets and internal quotation marks omitted). "On clear error review, our role is not to re-weigh the evidence; rather, our review of the district court's finding is significantly deferential." *Id.* at 515-16 (internal quotation marks omitted).

## B. Analysis

### 1. § 3142(g) Factors

The district court found that all four § 3142(g) factors weighed in favor of detention. It concluded that the government had carried its burden of proving that Samilton's release posed a danger to the community and that no condition could reasonably ensure the community's safety. The court observed that Samilton "was arrested on a firearm violation after having been found with a loaded firearm under his seat, and drugs in his possession, while serving a deferred state-court sentence involving a stolen vehicle and on-foot police chase." Aplt. App., vol I at 52. It further noted that the record suggested that Samilton admitted the gun and drugs

5

belonged to him. It therefore concluded that "the first two factors [nature and circumstances of the charged offense and weight of the evidence] weigh in favor of detention." *Id.*

We agree that these factors favor detention. Possession of a firearm by a drug user is a serious offense that involves firearms and controlled substances. And Samilton was not only found with a loaded firearm under his seat and drugs in his possession; he admitted the gun and drugs belonged to him. The presentence report further indicates that Samilton uses marijuana on a daily basis.

The district court then observed that this was neither Samilton's first firearm-related offense, nor his most severe. It listed the three firearms-related offenses from 2023 and 2025 in which Samilton was implicated, and also stated that although he denied it, "there is ample evidence that [Samilton] and at least some family members are gang affiliated." *Id.* Thus, it found, the last two factors [history and characteristics of the defendant, and nature and seriousness of danger he poses to the community if released] also weighed in favor of detention.

These factors also favor detention. Although the evidence showed Samilton has strong community and family ties, it also indicated that at least some of his family members have a gang affiliation. A significant number of his prior alleged offenses involving firearms appear to be gang related. His prior record includes multiple violent incidents involving firearms, which pose a clear danger to the community.

### 2. Sufficiency of Findings Concerning Release Conditions

Samilton contends the district court erred by failing to specifically discuss whether release conditions could be fashioned to ensure the safety of the community. He also contends the district court should have explained why the conditions the magistrate judge imposed were insufficient to ensure community safety.

To begin with, on appeal from a magistrate judge's release decision, the district court is not required to discuss the magistrate judge's findings concerning release conditions or to accord them any presumptive weight. Instead, the district court reviews the matter de novo. *See Cisneros*, 328 F.3d at 616 n.1. The district court therefore did not err by failing to discuss the conditions the magistrate judge had imposed.

More generally, the district court was not required to specifically discuss Samilton's proposed conditions, or to explain why a set of particular conditions could not be fashioned to mitigate his dangerousness to the community. A detention order must "include written findings of fact and a written statement of the reasons for the detention." § 3142(i)(I); *see also* Fed. R. App. P. 9(a)(1) ("The district court must state in writing, or orally on the record, the reasons for an order regarding the release or detention of a defendant in a criminal case."). Here, the district court made relevant factual findings, considered the required factors, and explained why *no release conditions or combination of conditions* could reasonably assure community

7

safety. Though its analysis was brief, it articulated these reasons with sufficient clarity to permit our appellate review. The statute does not require more.

### 3. Discussion of Evidence Favorable to Samilton

Samilton also argues that in addressing the § 3142(g) factors, the district court did not adequately address evidence or factors that favored his release on conditions. He contends there was no evidence he is presently a dangerous man or that he is a threat to any person or the community. He argues his past history was nonviolent and the district court overstated that history, particularly given that his only prior conviction involved a deferred sentence for nonviolent unauthorized use of a vehicle. He claims the district court failed to identify the nature and seriousness of the danger he poses to the community, and he notes that the current charge involves a non-violent offense.

The district court adequately addressed the issues of Samilton's dangerousness and prior criminal history. When making pretrial detention decisions, courts are not restricted to considering only actions resulting in convictions. *See* § 3142(g)(3)(A) (instructing courts to consider the defendant's "past conduct" and "criminal history"). The danger to the community is evident from the district court's decision, which discusses Samilton's history of drug use, possession and use of firearms, and gang affiliation.

**CONCLUSION**

On de novo review, we agree with the district court's adequately supported findings and conclusion that there are no conditions that would assure the safety of any person or the community. Considering the available information, the statutory factors favor detention. Accordingly, the district court's detention order is affirmed.

Entered for the Court

Per Curiam